IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRAL CORPORATION, an Ohio corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.  07 C 7029 |
| CMN COMPONENTS, INC., an Illinois corporation, | ) ) ) | Judge Gettleman |
| | ) | Magistrate Judge Denlow |
| Defendant. | ) | |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTIONS TO DISMISS UNDER RULES 12(b)(1)(6) AND (7)

Defendant, CMN Components, Inc. ("CMN"), by its attorney, in support of its Motions to Dismiss Under Rules 12(b) (1), (6) and (7) states as follows:

### I.  Preliminary Statement – Nature of the Controversy and These Motions

Plaintiff, Bral Corporation ( "Bral"), has filed a one count complaint ("the Complaint") alleging tortious interference with an existing contract between Bral and Johnstown America Corporation ("Johnstown")[1], represented by a document entitled Exclusive Supply Agreement and two amendments (hereinafter collectively referred to as "the Agreement").  A copy of the Complaint, including its exhibits, is hereto attached as Exhibit 1.  Plaintiff purports to provide a complete copy of the Agreement, including its two amendments, as exhibits A through C to the Complaint.  (Exhibit 1, ¶¶6 through 8)

---

[1] Johnstown is now known as FreightCar America, Inc.  For consistency and convenience, it will be referred to as "Johnstown" throughout this memorandum.

Defendant moves to dismiss for lack of subject matter jurisdiction because the claim is premature. Alternatively, Defendant moves to dismiss because Plaintiff has failed to join as a defendant a party that is indispensable under Rule 19. If the Court should reach the merits of the Complaint, Defendant moves to dismiss for failure to state a claim because the law requires, in addition to intentional inducement to breach a contract, some form of improper conduct, which Plaintiff has failed to plead. Also, the documents provided and the facts pled do not allow one to know if a breach of contract occurred and, hence, despite conclusory allegations of intentional inducement to breach, cannot state the necessary knowledge and intent.

## II.     Background

Plaintiff and Defendant are both corporations whose businesses include supplying parts used in the railroad industry. (Exhibit 1, ¶¶1 and 2) Plaintiff claims that pursuant to the Agreement, it was to be the exclusive provider to Johnstown of certain castings from May 1, 2004, through December 31, 2007. These parts are referred to in the Complaint as the Exclusive Parts. (Exhibit 1, ¶6)

Plaintiff alleges that Defendant knew of the Agreement and "offered castings" to Johnstown at prices lower than those offered by Bral, thereby inducing Johnstown to breach the Agreement. (Exhibit 1, ¶10)

## III.    Lack of Ripeness

Settlement of Bral's claim for breach of contract against Johnstown is the subject of negotiations in Pennsylvania, which the parties expect to complete one way or another by March 30, 2008. (See ¶¶ 3 and 4 of the Affidavit of Andrew K. Fletcher attached as Exhibit 2.) If Plaintiff is made whole by a settlement, it will have sustained no damage by reason of CMN's alleged interference with the

Agreement. Therefore, whether or not Bral will be able to assert any damages in this case depends on the outcome of its negotiations with Johnstown with respect to the alleged breach of contract.

If an action against Johnstown for breach of the Agreement becomes necessary, it will have to be filed in the Western District of Pennsylvania. Paragraph 22 of the Agreement states in part:

> "…The parties hereby submit to the exclusive jurisdiction of and waive any venue objections against, the United States District Court for the Western District of Pennsylvania (or any court of the Commonwealth of Pennsylvania located in such district) in any litigation arising out of this Agreement…"

(¶ 22 of exhibit A to Exhibit 1) Therefore, whether or not Plaintiff will be able to establish a breach of contract – a necessary element of its cause of action here [2] – would be decided in another court and could result in a judgment in favor of Johnstown making it impossible for Plaintiff to state a claim in this case.

When a claim depends on the outcome of some other lawsuit, it does not come into existence until the action on which it is based has terminated. *See, e.g., Cipa Manufacturing v. Allied Golf,* 1995 U.S. LEXIS 7604 (N.D. Ill. 1995). (A copy of the *Cipa* opinion is attached as Exhibit 3.) That case dealt with a counter-claim, but the principles of law are the same.

Cipa Manufacturing filed a collection action against Allied Golf for sums due from the sale of golf clubs. Allied Golf tried to plead recoupment because Allied Golf had been sued for patent infringement in a separate action, and the clubs it bought from Cipa were alleged to be some of the offending clubs. The court characterized this defense as a compulsory counter-claim. Whether or not

---

[2] It is axiomatic that a breach of an existing contract is a necessary element of tortious interference with an existing contract. *See, e.g., Israel v. National Canada Corp.* 276 Ill. App. 3d 454, 464 (1st Dist. 1995).

3

there could be recoupment and, if so, the amount of that claim were to be determined in the pending infringement action. Accordingly, the court held that Allied Golf's counter-claim was premature.

The situation here is analogous. We do not yet know if there was a breach of contract. If there was one, Bral may recover all of its damages through the current settlement negotiations or in a breach of contract action, which must be brought in the Western District of Pennsylvania. In the event of litigation, Bral may not be able to establish a breach. Because these issues are being resolved in another venue, Bral's claim against CMN is premature and must be dismissed. *See also, Castle v. United Steel Workers,* 898 F. Supp. 602, 613 (N.D. Ill. 1995) ("[T]his court cannot entertain a claim which is based upon "'contingent future events that may not occur as anticipated, or indeed may not occur at all.""" (citing *Oriental Health Spa,* 864 F. 2d 486, 489 (7th Cir. 1988) (quoting *Thomas v. Union Carbide Agricultural,* 473 U.S. 568, 580-81(1985) (in turn, quoting 13A *Charles A. Wright et al., Federal Practice and Procedure* § 3532 (2d ed. 1984))))

Even if the technical jurisdictional requirements of "case" or "controversy" under Article III of the Constitution are met, a case may still be dismissed as a matter of discretion for lack of ripeness. *See, Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d* §3532.1, notes 8 and 9. In addition to being contingent upon the outcome of events and litigation outside this lawsuit, general principles militate in favor of dismissal of this case for lack of ripeness. Judicial economy discourages parallel and duplicative litigation – two actions determining the breach of contract question – particularly when it works no hardship on Plaintiff to avoid this problem. Bral has already agreed to "submit to the exclusive jurisdiction of, and waive any venue objections against, the United States District Court for the Western District of Pennsylvania (or any court of the Commonwealth of

Pennsylvania located in such district) *in any litigation arising out of this Agreement.*" (¶ 22 of exhibit A to Exhibit 1) (emphasis added)  If it becomes necessary for Bral to litigate its breach of contract claim in the Western District of Pennsylvania, it can join CMN at that time.

### IV.    Missing an Indispensable Party

Johnstown should be joined as a defendant under the standards of Federal Rule of Civil Procedure 19(a).  However, if joined, it would move to be dismissed because venue of the action against it is improper in this district by virtue of the above forum-selection clause. (Exhibit 2, ¶¶ 9 and 10)  Johnstown would then have to be dismissed from this action.  Under the standards of Rule 19(b), this case would then have to be dismissed.

A.    <u>Johnstown Should Be Joined as a Defendant if Feasible Under Rule 19(a)</u>

Rule 19(a) describes two circumstances under which a person should be joined as a party. First, a person must be joined if those already parties cannot be accorded complete relief in that person's absence.  Alternatively, the absent party (here, Johnstown) should be joined if it claims an interest relating to the subject of the action and disposition of the action in that person's absence may (i) as practical matter impair or impede that person's ability to protect that interest; or (ii) subject any of those already parties to a substantial risk of incurring double, multiple or otherwise inconsistent obligations.

It is clear that Johnstown has an interest related to the subject of this case, namely, defending against Bral's claim that Johnstown breached the Agreement.  Its ability to protect that interest would be impaired "as a practical matter" if for no other reason than it would be unnecessarily forced to incur the expense and disruption of twice producing the same documents and having its personnel testify to the

5

same facts, over the same issue (breach of the Agreement) in two different lawsuits in two different states.

In addition, as previously noted in CMN's motion for extension of time to answer or otherwise plead, if compelled to answer, CMN will be filing a counter-claim against Bral alleging tortious interference with prospective economic advantage. Specifically, Bral knowingly and inaccurately disparaged CMN to CMN's supplier of the Exclusive Parts, which are the subject of the Agreement and of this lawsuit. This activity disrupted CMN's ability to provide competitive parts to Johnstown for several months at the same time Bral negotiated the Agreement with Johnstown. Since Bral and CMN were the two primary sources of the Exclusive Parts to Johnstown at that time, by improperly shutting down CMN's ability to compete, Bral gave itself a huge, unfair advantage in its negotiations with Johnstown for an exclusive supply arrangement. Johnstown effectively had no choice but to accept what Bral offered if Johnstown wanted access to the Exclusive Parts for its own production of railcars. This means that the exclusivity provision of the Agreement was only obtained due to Bral's tortious conduct directed against CMN, so that the Agreement is void or voidable. Obviously, Johnstown's ability to defend against the claim for breach of the Agreement would, as a practical matter, be seriously impaired if it is not joined as a defendant in this action.

B.    The Claims Against Johnstown Will Have to Be Dismissed Due to Improper Venue

If joined, Johnstown would object to this venue as improper by virtue of the above forum-selection clause. (See Exhibit 2) Accordingly, the claims against Johnstown will have to be dismissed or transferred to the Western District of Pennsylvania. *See, e.g., American Patriot v. Mutual Risk Management,* 364 F. 3d 884, 888 (7th Cir. 2004) (A plaintiff cannot defeat a forum-selection clause

by its choice of provisions to sue on, of legal theories to press, or of defendants to name in a suit. If this were true, such clauses would be empty.)

C.    This Case Will Have to Be Dismissed Pursuant to Rule 19(b)

Once Johnstown has been dismissed, Rule 19(b) requires the Court to determine whether in equity or good conscience the action should proceed against the remaining parties or be dismissed, Johnstown being thus regarded as indispensable. The Court must consider four factors, all of which militate in favor of dismissal of this case.[3]

First, a judgment rendered in Johnstown's absence might be prejudicial to those already parties. CMN could be subjected to an adverse judgment while a later judgment in Pennsylvania determined that there was no breach of contract, so that the judgment against CMN would be inconsistent, unfair and possibly subject to reversal or collateral attack. Also, Johnstown is obviously in the best position to defend against a breach of contract action against it so that CMN is handicapped in its ability to defend against that critical element of the claim against it.

Second, there is no protective provision, shaping of relief or other measure that could lessen or avoid the above problems.

Third, a judgment against CMN could be inadequate in that it could lead to inconsistent judgments as described above. Also, CMN could be deprived of the credit it should receive due to any later settlement Bral made with Johnstown or judgment Bral obtained against Johnstown.

---

[3]    It is significant that Rule 19(b) sates, "The factors to be considered by the court include: …" Thus, while the Court must consider the four, listed factors, it is not limited to them. The Court must ultimately be guided by "equity and good conscience."

Fourth, Plaintiff would still have a remedy if this case were dismissed for nonjoinder. Bral could join its claims against CMN with a breach of contract action against Johnstown, except that such an action would have to be brought in the Western District of Pennsylvania.

D.     The General Principles to Be Considered in the Application of Rule 19 Favor Dismissal

"There is no precise formula for determining whether a particular nonparty must be joined under Rule 19(a). The decision has to be made in terms of the general policies of avoiding multiple litigation, providing the parties with complete and effective relief in a single action, and protecting the absent persons from the possible prejudicial effect of deciding the case without them. Account also must be taken of whether other alternatives are available to the litigants." *Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d* § 1604. Similarly, as noted in footnote 3 hereof, while Rule 19(b) requires the Court to consider four factors, they are not to be exclusive. Rather, the Court is to make its determination based on "equity and good conscience." The general principles outlined above and those of equity and good conscience mandate dismissal.

Dismissal of this action prevents unnecessary waste of judicial resources by avoiding two lawsuits in two different courts over the same alleged breach of contract. It prevents Plaintiff from circumventing its contractual commitment to submit "any litigation arising out of [the] Agreement" to the federal or state courts in the Western District of Pennsylvania. (¶ 22 of exhibit A to Exhibit 1) It also prevents Plaintiff from giving itself "two bites of the apple" – if it loses either case against CMN or Johnstown, it still gets a second chance against the other – at the expense of CMN, Johnstown and the taxpayers who must fund the federal courts and pay for two lawsuits over the same issue.

E.     The Case Can Be Dismissed Now Because the Law Does Not Require Futile Acts

In applying Rule 19, the Court can review evidence outside the pleadings. *English v. Cowell,* 10 F. 3d 434, 437 (7th Cir. 1993). The Affidavit of Andrew K. Fletcher makes it clear that, if joined as a defendant, Johnstown will object to venue, which is only proper in the Western District of Pennsylvania as to Johnstown by reason of the forum-selection clause. (Exhibit 2, ¶¶ 9 and 10) Accordingly, the Court can follow the complete analytical sequence required by Rule 19 without going through the actual motions of first ordering Plaintiff to add Johnstown as a defendant, wait for Johnstown's motion to dismiss based on improper venue, grant that motion and finally dismiss this action under Rule 19(b).

This is also consistent with the general rule that the law does not require futile acts. *See, e.g., Long v. CTA,* 985 F. Supp. 836 (N.D. Ill. 1997) (Amendments to pleadings will not be allowed if they would be futile.); *Automobile Mechanics Local No. 701 v. Trax, Inc.*, 1987 U.S. Dist. LEXIS 10118 (N.D. Ill. 1987) (While ordinarily required in a *Boys Market* action, arbitration will not be ordered if it would be futile.); *Flip Side Productions v. JAM Productions,* 1984 U.S. Dist. LEXIS 15951 (N.D. Ill. 1984) (A request to use a facility under monopolistic control is generally a prerequisite of an anti-trust action but is not necessary if the request would be futile.); and *Mooney v. Bayfield Construction,* 1995 U.S. Dist. LEXIS 12498 (N.D. Ill. 1995) (Exhaustion of administrative remedies is not required if it would be futile.)

Based on what is already before the Court, this case can and should be dismissed now.

**V.     The Complaint Does Not State a Claim for Which Relief Can Be Granted**

A.     Applicable Law

The two states whose law might apply are Illinois and Pennsylvania. While the subject parts were delivered to Pennsylvania and the Agreement is governed by Pennsylvania law, the alleged tort took place in Illinois and this claim is against an Illinois corporation. (CMN is incorporated in Illinois and has its principal place of business here.) It would appear on balance, under the significant contacts test, that Illinois law would control, but it is not necessary to make this analysis, since the law of both states is the same with respect to the need to demonstrate improper conduct. Both Illinois and Pennsylvania follow section 767 of the Restatement (Second) of Torts in holding that intentionally interfering with an existing contract must also be "improper" in order to constitute a tort.

*La Rocco v. Bakwin,* 108 Ill. App. 3d 723, 730 (2nd Dist. 1982) ("The tort of interference with existing or prospective contractual relations requires that the interference be both intentional and improper, and in determining whether the interference is improper, or not, section 767 of the Restatement (Second) of Torts states…."*) Triffen v. Janssen,* 626 A2d 571, 574 (Pa. Super. 1993) ("In determining whether a particular course of conduct is improper for the purposes of setting forth a cause of action for intentional interference with contractual relations, we must look to § 767 of the Restatement (Second) of Torts, which provides as follows:

> 'In determining whether an actor's conduct in intentionally interfering with an existing contract or a prospective contractual relation is improper or not, consideration is given to the following factors…'")

B.     The Complaint Does Not Allege Improper Conduct

Plaintiff's Complaint alleges intentional interference, but that by itself is not sufficient for the Complaint fails to allege the necessary impropriety.

Whether or not intentional interference is improper is determined by considering the factors listed in section 767 of the Restatement (Second) of Torts. *LaRocco*, 108 Ill. App. 3d at 730; ….") *Triffen,* 626 A2d at 574.  These factors are listed and briefly analyzed below:

(a) The nature of the actor's conduct – CMN offered lower prices to Johnstown, which is the essence of competition;

(b) The actor's motive – Offering to sell something for a lower price is a legitimate business purpose;

(c) The interests of the other with which the actor's conduct interferes – Bral was attempting to corner the market on the supply of the Exclusive Parts to the detriment of its customer, Johnstown, and to the detriment of the consuming public;

(d) The interests sought to be advanced by the actor – Johnstown wanted better prices, and CMN was seeking to sell parts to Johnstown, which it did by competing with Bral by offering better pricing;

(e) The social interests in protecting the freedom of action of the actor and the contractual interests of the other – Society has a strong interest in fair competition as compared to Bral's interest in monopolizing the sale of certain parts to Johnstown;

  (f) The proximity or remoteness of the actor's conduct to the interference – CMN's alleged conduct consisted of offering lower prices to Johnstown; and

  (g) The relationship between the parties – The parties were not related in any fiduciary capacity but were competitors in the marketplace.

For the reasons summarized above, none of the above factors imply any impropriety on the part of CMN.

  Paragraph 9 of the Complaint alleges that CMN knew Bral's prices but does not claim that this knowledge was improper or wrongfully attained. Paragraph 10 states that CMN offered Johnstown lower prices, but this is not improper by itself. Offering lower prices is a fundamental attribute of competition. Paragraph 15 states that CMN's intentional interference was without justification but fails to state the reason that this conclusory statement is true. Paragraph 16 claims that CMN acted with the intent to injure Bral's business, but the only injury alleged is that Bral could not sell as many parts to Johnstown because CMN competed with Bral in the marketplace by offering better prices. (See Exhibit 1 and the above cited paragraphs.)

  Even under the liberal federal system of notice pleading, mere conclusions alone are not sufficient. There must also be allegations of the underlying facts. *Lucien v. Preiner,* 967 F. 2d 1166, 1168 (7th Cir. 1992) ("Even the liberal system of notice pleading embodied in the Federal Rules of Civil Procedure requires more than …a bald assertion. A complaint must at least 'include the operative facts upon which a plaintiff bases his claim.'" *Citing Rodgers v. Lincoln Towing,* 771 F. 2d 194, 198 (7th Cir. 1985))

C.	The Complaint Does Not Allege Sufficient Facts to Support the Conclusion That a Breach of Contract Has Occurred and, Therefore, Cannot Sustain a Claim for Intentional Inducement of Such a Breach

Paragraph 11 of the original Exclusive Supply Agreement, states in part as follows: "Production requirements in excess of twelve (12) complete railcar sets per day are subject to negotiation between the parties, which requirements shall be set forth in a written agreement of the parties." (¶ 11 of exhibit A to Exhibit 1)  This means that if Johnstown produced more than twelve (12) railcars per day at any time during the term of the Agreement, supply of the additional Exclusive Parts needed during the term of the Agreement was to be governed by a separate written agreement (or agreements).  This additional agreement (or agreements), if any, may or may not include the exclusivity provision as the additional production capacity requirements were "subject to negotiation between the parties."  The critical point is that, by its own terms, the Agreement before the Court only applies to the supply of Exclusive Parts needed for the production of twelve (12) railcars per day.

The Complaint fails to allege that Johnstown's production never exceeded twelve railcars per day (Defendant has been informed and believes that production was much higher), nor does the Complaint even reference, much less attach, the separate written agreement(s) necessitated by the Agreement in the event production did exceed the stated amount.  Therefore, conclusory allegations notwithstanding, it is impossible to tell from the facts pled whether or not a breach of the Agreement by Johnstown actually occurred.  Consequently, those same allegations do not support a claim that CMN knowingly induced Johnstown to breach the Agreement.

Paragraph 1 of the original Exclusive Supply Agreement states that the Exclusive Parts are described in exhibit A of the Agreement. That paragraph also states that the specifications of the Exclusive Parts are set forth in exhibit B of the Agreement, and that exhibit B of the Agreement may be amended from time to time by mutual agreement of the parties. (¶1 of exhibit A to Exhibit 1) Neither exhibit A nor any version of exhibit B to the Agreement have been provided with the Complaint. These exhibits are necessary to know if CMN actually sold Johnstown parts covered by the Agreement, i.e., to know whether there could have been a breach.

### VI.   Conclusion

For the above reasons, this case should be dismissed because it is not ripe for adjudication. Alternatively, Johnstown should be added as a defendant under the standards of Federal Rule of Civil Procedure 19(a), but since it is not feasible to do so, this cause should be dismissed because Johnstown is an indispensable party under Rule 19(b). In the event the Court should reach the merits of the Complaint, it should be dismissed for failure to state a claim upon which relief can be granted.

                                                              Respectfully submitted,

                                                              CMN COMPONENTS, INC.,

                                                              _____/s/James R. Dashiell_____
                                                                    Its attorney

James R. Dashiell  
Dashiell Law Offices, LLC  
Attorneys for Defendant  
10 S. LaSalle, Suite 3500  
Chicago, IL 60603  
Telephone:  312/920-9118  
6182044

## INDEX OF EXHIBITS

**Exhibit 1** – Plaintiff's Complaint including exhibits A through C to same;

**Exhibit 2** – Affidavit of Andrew K. Fletcher; and

**Exhibit 3 –** *Cipa Manufacturing v. Allied Golf,* 1995 LEXIS 7604