## EXCLUSIVE SUPPLY AGREEMENT

This EXCLUSIVE SUPPLY AGREEMENT (this "Agreement") is made as of this 1st day of May, 2004 by and between **JOHNSTOWN AMERICA CORPORATION**, a Delaware corporation, with its principal place of business at 17 Johns Street, Johnstown, Pennsylvania 15901 ("Johnstown"), and **BRAL CORPORATION**, an Ohio corporation, with its principal place of business at 2610 North Park Avenue, Warren, Ohio 44483 ("Bral").

WHEREAS, Bral has previously procured and provided for Johnstown certain railroad-related parts manufactured by Ningbo Daming Precision Casting Co., Ltd. ("Daming") of China, and from which Bral anticipates procuring the Exclusive Parts (as defined herein); and

WHEREAS, Bral and Johnstown desire that Bral be the exclusive provider and supplier to Johnstown of certain specified railroad-related products in accordance with the terms of this Agreement.

NOW, THEREFORE, the parties agree as follows:

1. **Exclusive Provider**. During the term of this Agreement (the "Term"), Bral shall be the exclusive and sole provider to Johnstown of those certain AutoFlood II and AutoFlood III castings described on Exhibit A attached hereto ("Exclusive Parts"). The Exclusive Parts shall be produced by Bral in accordance with those certain tooling specifications and other information described on Exhibit B attached hereto (the "Specifications"), which Specifications may be modified from time to time by mutual agreement of the parties. Subject to this Section 1, Johnstown shall purchase its full requirements of Exclusive Parts during the Term from Bral; provided, however, that Johnstown is not required hereunder to guaranty purchase of a minimum quantity of Exclusive Parts. Nothing herein shall restrict or limit Johnstown's right, during the Term, to purchase railcar parts and components, other than Exclusive Parts, from any other manufacturer or supplier.

From time to time, Johnstown shall provide to Bral a written purchase order, indicating the quantity of Exclusive Parts being ordered and stating the date when such Exclusive Parts are due for delivery, which date shall be at least ninety (90) days in advance. Upon receipt of such purchase order, Bral will promptly (which shall in no event be more than three (3) business days from receipt of Johnstown's purchase order) provide written confirmation to Johnstown of the purchase order. If Bral fails to provide such confirmation or is otherwise unable to provide the requested Exclusive Parts in accordance with the purchase order, Johnstown may procure such Exclusive Parts from other suppliers of Exclusive Parts, and such procurement by Johnstown shall not be a breach by Johnstown of this Agreement.

2. **Non-binding Forecast**. Upon the execution by the parties of this Agreement and on each six (6) month anniversary thereafter, Johnstown shall provide to Bral its non-binding six (6) month forecast of the number and mix of Exclusive Parts which Johnstown anticipates it will request Bral to provide to Johnstown during the next six (6) month period. Such forecast shall be used by Bral for planning purposes only. Johnstown shall be required to purchase from Bral

~CHGO1:30433987.v7

EXHIBIT A

only those Exclusive Parts ordered by Johnstown pursuant to its purchase orders submitted to Bral as described in Section 1.

3.  **Inventory.** Bral will maintain an inventory of Exclusive Parts in excess of Johnstown's normal production requirements, in such amounts as are agreed upon by Johnstown and Bral, but in no event less than enough Exclusive Parts needed to complete two hundred forty (240) railcars. Upon the termination of this Agreement, Johnstown will schedule shipments from Bral to deplete such inventory of Exclusive Parts on Johnstown's then existing purchase orders. To the extent that an inventory of Exclusive Parts remains following such shipments, Johnstown will issue a new purchase order for such excess inventory. Purchases by Johnstown of such excess inventory shall be made in accordance with the terms and conditions described in this Agreement, except that prices for such excess inventory shall be determined by the mutual agreement of the parties. The terms and provisions of this Section 3 shall survive expiration and early termination of this Agreement.

4.  **Intentionally Deleted**.

5.  **Term of Agreement**. The Term shall be for a period of twenty-four (24) months, commencing on the date first above written.

6.  **Prices**. The prices for the Exclusive Parts in effect during the Term are set forth on Exhibit A. The parties acknowledge that such prices reflect a reduction of Bral's customary charges for these products in consideration for Johnstown procuring the Exclusive Parts from Bral in accordance with this Agreement. It is further agreed that such pricing will begin with Johnstown's purchase order #36436.

7.  **Terms of Payment**. On the date of delivery by Bral of the Exclusive Parts to Johnstown, Bral will invoice Johnstown for the Exclusive Parts. Payment of such invoice shall be made no later than thirty (30) days following the date of receipt of such Exclusive Parts by Johnstown, provided that Johnstown shall have no obligation to pay for Exclusive Parts which are rejected by Johnstown in accordance with Section 10 hereof.

8.  **Shipping; Delivery Freight; Tariffs**. The Exclusive Parts will be shipped "FOB Bral". Freight charges relating to shipment of the Exclusive Parts from Bral to Johnstown shall be for the account of Johnstown. All other freight and other charges, including (without limitation) freight charges from Daming (or others) to Bral, and all tariffs, duties, customs and similar charges imposed on the shipment of the Exclusive Parts shall be for the account of Bral.

9.  **Risk of Loss**. All risk of loss of or damage to the Exclusive Parts shall remain with Bral until such Exclusive Parts are inspected and placed on board of Johnstown's designated carrier at Bral's shipping point. All arrangements for the shipment of the Exclusive Parts from Bral to Johnstown shall be subject to Johnstown's review and approval.

~CHGO1:30433987.v7

10. **Inspection.** Johnstown shall inspect the Exclusive Parts following its receipt thereof to ensure conformance to the Specifications and may reject any Exclusive Parts that do not conform to the Specifications.

11. **Production Capacity.** Bral has reserved production capacity at Daming's manufacturing facilities to guarantee the production of Exclusive Parts in quantities of twelve (12) complete railcar sets of AutoFlood II or III castings per business day, which Exclusive Parts shall be retained by Bral for sale to Johnstown under this Agreement. Production requirements in excess of twelve (12) complete railcar sets per day are subject to negotiation between the parties, which requirements shall be set forth in a written agreement of the parties.

12. **Alternative Manufacturer.** Bral shall not provide to Johnstown any Exclusive Parts supplied by any manufacturer other than Daming without Johnstown's prior written consent, which consent shall not be unreasonably withheld by Johnstown. To obtain approval of a proposed alternative manufacturer of Exclusive Parts (an "Alternative Manufacturer"), Bral shall provide to Johnstown all information requested by Johnstown relating to such Alternative Manufacturer, including but not limited to (i) the name of the Alternative Manufacturer, (ii) the address of the Alternative Manufacturer, (iii) general financial information concerning the Alternative Manufacturer, (iv) information substantiating the Alternative Manufacturer's capability of meeting Johnstown's quantity, quality and delivery requirements for Exclusive Parts, and (v) sample products manufactured by the Alternative Manufacturer and the specifications therefor.

13. **State Sales and Use Tax Exemption.** Johnstown represents and warrants that the Exclusive Parts are to be used for proper purposes in accordance with its Pennsylvania Sales Tax Blanket Exemption Certificate dated April 29, 2004 and, therefore, that the Exclusive Parts are exempt from state sales and use taxes.

14. **Warranties.** Product warranties regarding the Exclusive Parts are contained on Exhibit C attached hereto and made a part hereof. Bral's warranties of the Exclusive Parts survive expiration and earlier termination of this Agreement.

15. **Compliance with Law.** Bral represents and warrants that: (a) all Exclusive Parts have been or shall be manufactured in compliance with the applicable requirements of federal, state and local laws, regulations, ordinances and administrative orders and rules of the United States; and (b) Bral shall strictly adhere to any applicable federal, state and local laws, regulations and prohibitions of the United States and its territories in which the Exclusive Parts are manufactured or delivered with respect to the operation of its production facilities and its other business and labor practices.

16. **Confidential Information.** Bral shall maintain as confidential, the Specifications and all other drawings, trade secrets and intellectual property (the "Confidential Information") furnished from time to time by Johnstown to Bral with respect to the Exclusive Parts and shall not disclose to third parties or use (other than as contemplated by this Agreement) the

3

Confidential Information, without the prior written consent of Johnstown. Bral's obligations of confidentiality shall survive expiration and earlier termination of this Agreement.

17. **Termination.** Notwithstanding the provisions of Section 5 hereof, this Agreement may be terminated in accordance with the following provisions:

(a) Either party may terminate this Agreement at any time by giving notice in writing to the other party should the other party file a petition of any type as to its bankruptcy, be declared bankrupt, become insolvent, make an assignment for the benefit of creditors or go into liquidation or receivership, or

(b) Johnstown may terminate this Agreement at any time by giving notice in writing to Bral should Bral be unable to fulfill any of Johnstown's purchase orders of Exclusive Parts, or

(c) Johnstown may terminate this Agreement by giving notice in writing to Bral should an event of force majeure (as defined in Section 18) continue for more than ninety (90) calendar days, or

(d) Either party may terminate this Agreement by giving notice in writing to the other party in the event the other party is in material breach of this Agreement and shall have failed to cure such breach within ninety (90) calendar days after receipt of written notice thereof from the non-breaching party.

18. **Liquidated Damages.** The parties acknowledge that in the event of breach of this Agreement by Johnstown acquiring Exclusive Parts from suppliers other than Bral (other than as permitted by Section 1 hereof), Bral would be damaged in a manner whereby any remedy at law would be inadequate and it would be impracticable and extremely difficult to determine the actual damage resulting to them. Accordingly, in addition to all other remedies available to Bral at law or equity, Johnstown will pay to Bral, as liquidated damages and not as a penalty, the sum of One Thousand Dollars ($1,000.00) per car for each railcar on which Exclusive Parts which are obtained by Johnstown from a source other than Bral are incorporated.

The parties further acknowledge that in the event Bral fails to provide to Johnstown the Exclusive Parts as contemplated herein, unless such failure is for reasons beyond the control of Bral resulting from an event of force majeure (such as strike, war, natural disaster, lack of raw material or other reasons beyond the control of Bral, which shall not include the inability of Bral to obtain castings or other components), Johnstown would be damaged in a manner whereby any remedy at law would be inadequate and it would be impracticable and extremely difficult to determine the actual damage resulting to it. Accordingly, in addition to all other remedies available to Johnstown in law or equity, Bral will pay to Johnstown, as liquidated damages and not as a penalty, the sum of Three Thousand Dollars ($3,000.00) per car calculated by dividing the number of Exclusive Parts ordered by Johnstown and not timely delivered by Bral by 120 (which reflects the number of Exclusive Parts to be incorporated into a single railcar).

19. **Entire Agreement.** This Agreement, including the Exhibits attached hereto, the terms of which are hereby incorporated into this Agreement, constitutes the entire agreement between Johnstown and Bral regarding the subject matter hereof, and supersedes and replaces all

4

prior agreements, negotiations and discussions, oral or written, between Johnstown and Bral relating to such subject matter. This Agreement may not be changed or modified except by a written instrument executed by both parties.

20. **Independent Contractors.** The relationship between Johnstown and Bral established by this Agreement is that of independent contractors, and nothing in this Agreement shall be construed to constitute the parties as principal and agent, employer and employee, partners, joint venturers, co-owners or otherwise as participants in a joint undertaking. The parties understand and agree that, except as specifically provided for herein, neither party grants to the other party the power or authority to make or give any agreement, statement, representation, warranty or other commitment on their behalf, or to enter into any contract or otherwise incur any liability or obligation, express or implied, on their behalf, or to transfer, release or waive any of their right, title or interest.

21. **Rights and Obligations on Termination.** In the event of the termination of this Agreement for any reason, the parties will have the following rights and obligations:

(a) Bral shall be obligated to fill all of Johnstown's purchase orders for Exclusive Parts accepted by Bral prior to such termination;

(b) Neither party shall be released from the obligation to make payment of all amounts then or thereafter due and payable with respect to obligations arising prior to the effective date of termination; and

(c) The obligations hereunder which by their terms extend beyond termination of this Agreement, including, without limitation, the obligations pursuant to Section 3 (relating to depletion of excess inventory), Section 14 (relating to warranties) and Section 16 (relating to confidentiality), will survive the termination of this Agreement.

22. **Governing Law; Jurisdiction.** This Agreement shall be governed, enforced and construed in accordance with the applicable laws of the Commonwealth of Pennsylvania, without regard to its conflict of laws doctrine. The parties hereby submit to the exclusive jurisdiction of, and waive any venue objections against, the United States District Court for the Western District of Pennsylvania (or any court of the Commonwealth of Pennsylvania located in such district) in any litigation arising out of this Agreement. Each party hereby waives any objection that it may now or hereafter have to the laying of venue of any such proceeding in any court in the Commonwealth of Pennsylvania and any claim that it may now or hereafter have that any such proceeding in any court in the Commonwealth of Pennsylvania has been brought in any inconvenient forum.

23. **Binding Effect.** This Agreement shall be binding on Johnstown and Bral and their respective successors and assignees.

24. **Assignment.** Neither party may assign this Agreement or delegate, transfer or otherwise dispose of any right, duty or responsibility created in this Agreement to any other

~CHGO1:30433987.v7

individual or entity, without the prior written consent of the other party hereto. Any attempted unauthorized assignment by either party shall be void and unenforceable.

25.  **Waiver.**  A failure of either party to exercise any right or remedy provided for herein shall not be deemed to be a waiver of any such right or remedy, or a waiver of any other occurrences entitling either party to exercise a right or remedy.

26.  **Notices.**  Notices, consents, requests, demands and other communications permitted or required to be given hereunder will be deemed sufficient if given in writing and if delivered personally by reputable overnight courier, by United States registered or certified mail, postage prepaid, return receipt requested, or by confirmed facsimile, telecopy, telegraph, telex or similar telegraphic communication equipment, addressed to the parties as set forth below or at such other addresses as the respective parties may designate by like communication from time to time. Communications so given will be effective upon: (a) receipt by the party to which notice is given; or (b) on the third (3rd) day following the date such communication was posted, whichever occurs first.

If to Johnstown:        JOHNSTOWN AMERICA CORPORATION
                       17 Johns Street
                       Johnstown, PA 15901
                       Attention: Frank Bernatt
                       Fax No.: (814) 533-6959

If to Bral:            BRAL CORPORATION
                       2610 North Park Avenue
                       Warren, OH 44483
                       Attention: Keith Dunbar
                       Fax No.: (330) 393-9322

27.  **Severability.**  If at any time subsequent to the date hereof any provision of this Agreement shall be held by any court of competent jurisdiction to be illegal, void, or unenforceable, such provision shall be of no force and effect, and the illegality or unenforceability of such provision shall have no effect upon and shall not impair the enforceability of any other provision of this Agreement.

28.  **Counterparts.**  This Agreement may be executed in any number of counterparts, but all of such counterparts together shall constitute one and the same agreement.

29.  **Headings.**  The headings of the sections are inserted for convenience of reference only, and shall not in any way effect the meaning or interpretation of this Agreement.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed by their respective officers as of the date first above written.

JOHNSTOWN AMERICA CORPORATION

By: *[signature]*
Its: Vice Pres – Purchasing

BRAL CORPORATION

By: *[signature]* KEITH E. DUNBAR
Its: PRESIDENT

7

## FIRST AMENDMENT TO EXCLUSIVE SUPPLY AGREEMENT

THIS FIRST AMENDMENT TO EXCLUSIVE SUPPLY AGREEMENT (this "Amendment"), dated as of May 10, 2004, is by and between **JOHNSTOWN AMERICA CORPORATION**, a Delaware corporation, with its principal place of business at 17 Johns Street, Johnstown, Pennsylvania 15901 ("Johnstown"), and **BRAL CORPORATION**, an Ohio corporation, with its principal place of business at 2610 North Park Avenue, Warren, Ohio 44483 ("Bral").

### RECITALS

WHEREAS, Johnstown and Bral previously entered into that certain Exclusive Supply Agreement dated as of May 1, 2004 (the "Supply Agreement"); and

WHEREAS, Johnstown and Bral desire to amend the Supply Agreement as provided herein.

NOW, THEREFORE, in consideration of the mutual agreements herein contained and other good and valuable consideration, the adequacy of which is hereby acknowledged, and subject to the terms and conditions hereof, the parties hereto agree as follows:

1.   **Definitions**. Capitalized terms used herein and not otherwise defined shall have the meanings provided for in the Supply Agreement.

2.   **Amendments**. The Supply Agreement is hereby amended as follows:

   (a)   The third sentence of Section 1 of the Supply Agreement is amended and restated in its entirety, as follows:

   "Subject to this Section 1 and Section 4, Johnstown shall purchase its full requirements of Exclusive Parts during the Term from Bral; provided, however, that Johnstown is not required hereunder to guaranty purchase of a minimum quantity of Exclusive Parts."

   (b)   Section 4 of the Supply Agreement is amended and restated in its entirety, as follows:

   "4.   **Developing Other Sources**. Notwithstanding the appointment of Bral under this Agreement as the exclusive provider to Johnstown of Exclusive Parts, during the Term Johnstown may develop relationships with other manufacturers and/or suppliers of railroad-related parts (the "Alternative Suppliers") concerning the manufacture and/or supply to Johnstown of Exclusive Parts subsequent to the Term (or during the Term if Bral is unable to timely fill Johnstown's purchase orders for Exclusive Parts during the Term), which relationships may include (without limitation) (a) developing and/or supplying tooling for the manufacture of Exclusive Parts, (b) inspecting and sampling Exclusive Parts and components thereof produced or supplied by the Alternative

~CHGO1:30442798.v1

EXHIBIT
B

Suppliers and (c) testing by Johnstown or its agents of such Exclusive Parts and components thereof on not more than five (5) AutoFlood II and AutoFlood III railroad cars total."

(c) The parenthetical in the first sentence of Section 18 is amended and restated, as follows:

"(other than as permitted by Sections 1 and 4 hereof)".

3. **Miscellaneous**.

(a) **Limited Nature of Amendments**. The parties hereto acknowledge and agree that the terms and provisions of this Amendment amend, add to and constitute a part of the Supply Agreement. Except as expressly modified and amended by the terms of this Amendment, all of the other terms and conditions of the Supply Agreement and all documents executed in connection therewith or referred to or incorporated therein remain in full force and effect and are hereby ratified, reaffirmed, confirmed and approved.

(b) **Conflict**. If there is an express conflict between the terms of this Amendment and the terms of the Supply Agreement, or any of the other agreements or documents executed in connection therewith or referred to or incorporated therein, the terms of this Amendment shall govern and control.

(c) **Counterparts**. This Amendment may be executed in one or more counterparts, each of which shall be deemed to be an original.

(d) **Governing Law**. This Amendment shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the date first above written.

BRAL CORPORATION

By: *Keith E. Ambar* KEITH E. AMBAR
Its: PRESIDENT

JOHNSTOWN AMERICA CORPORATION

By: *[signature]*
Its: Vice Pres - Purchasing

- 2 -

## SECOND AMENDMENT TO EXCLUSIVE SUPPLY AGREEMENT

Johnstown America Corporation and Bral Corporation hereby agree this 6th day of December, 2004 to amend the Exclusive Supply Agreement of May1, 2004 as follows:

Item 5.  The term shall be extended to December 31, 2007.

Item 6.  It is acknowledged that prices for the original minimum guaranteed quantity of 12 complete car sets per day will continue to be in effect until April 30, 2006. These prices will also apply for any additional number of car sets shipped to Johnstown America through June 30, 2005. Thereafter, Daming may request price adjustments in writing a maximum of two times per year, and on or before April 30th and October 31st of any given year, including calendar year 2005. Any request for price adjustment will be justified for Johnstown America consideration.

It is also agreed that Johnstown America will allow for scrap and raw material surcharges, if required, beginning with shipments scheduled for Johnstown America on or after January 1, 2006. Such surcharges will be justified, and based on American Metal Market data. Surcharges will be frozen for quarterly intervals, and will be reviewed 30 days prior to the end of any calendar quarter.

JOHNSTOWN AMERICA CORPORATION
By: _____
Its: V.Pres - Purchasing

BRAL CORPORATION
By: _____
Its: PRESIDENT

EXHIBIT C