IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRAL CORPORATION, | ) | CASE NO. 07 C 7029 |
| | ) | |
| Plaintiff, | ) | JUDGE GETTLEMAN |
| | ) | MAGISTRATE JUDGE DENLOW |
| vs. | ) | |
| | ) | |
| CMN COMPONENTS, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## I.   INTRODUCTION

The motion to dismiss (the "Motion") filed by defendant CMN Components, Inc. ("CMN") is comprised of a tangled array of conjectural scenarios and arguments that are without support in legal authority and improperly rely on facts not contained within the Complaint filed by Plaintiff Bral Corporation ("Bral").  CMN seeks to dismiss Bral's claim for tortious interference with contractual relationship employing three theories:  (i) failure to state a claim upon which relief may be granted; (ii) failure to join an indispensable party; and (iii) lack of subject matter jurisdiction in the absence of a case or controversy.  As demonstrated below, these arguments are entirely without merit.  Bral has stated a viable claim upon which it can obtain relief from CMN without the necessity of joining any third party for conduct and injuries that are not contingent on any future events.  Accordingly, the Motion should be denied.

## II.   BACKGROUND FACTS

Bral entered into an Exclusive Supply Agreement with Johnstown America Corporation ("Johnstown") on or about May 1, 2004 (the "Supply Agreement").  That contract provides that Bral was to be the exclusive and sole provider of certain AutoFlood II™ and AutoFlood III™

castings (the "Exclusive Parts") that Johnstown required during the term of the Supply Agreement in the manufacture of railroad cars using the Megaflo™ hopper system. (Compl. at ¶ 6.) Consistent with the requirement that Johnstown was to purchase all of its required Exclusive Parts from Bral, the Supply Agreement allowed Johnstown to develop a relationship with another supplier of such goods for only three purposes: (a) developing and/or supplying tooling for the manufacture of Exclusive Parts; (b) inspecting and sampling Exclusive Parts and components produced or supplied by such alternate manufacturer or supplier; and (c) testing of any Exclusive Parts provided by the alternate manufacturer or supplier on not more than five (5) AutoFlood II™ and AutoFlood III™ railroad cars in total. (*Id*. at ¶ 7.) As amended in December 2004, the Supply Agreement was to remain in effect through December 31, 2007. (*Id*. at ¶ 8.)

Notwithstanding these terms, Johnstown began ordering and purchasing castings for use in the manufacture of AutoFlood II™ and AutoFlood III™ railroad cars from CMN within months of Bral and Johnstown executing the Supply Agreement. (Compl. at ¶ 11.) CMN imported and shipped no less than 3,884 sets of CMN Violating Parts to Johnstown during the period from June 2004 through November 2007. (*Id*.) Between May 1, 2004 and December 31, 2007, Johnstown had installed CMN Violating Parts on no less than 5,000 railcars and compiled a substantial inventory of CMN Violating Parts. (*Id*. at ¶ 12.) Johnstown significantly reduced the magnitude of the purchase orders it issued to Bral because it was also receiving CMN Violating Parts directly from CMN and installing them on the railcars it manufactured. (Id. at ¶ 15.) These actions were in clear breach of the exclusive dealing requirements contained in the Supply Agreement. (*Id*.)

That breach was caused by CMN's wrongful interference with the contractually defined relationship between Bral and Johnstown. (Compl. at ¶ 15.) CMN knew of the Supply Agreement and of the prices at which Bral had agreed to sell castings to Johnstown. (*Id*. at ¶¶ 9 and 14.) Despite knowing that Johnstown was required to order all of its castings from Bral for a specified term, CMN actively solicited Johnstown to purchase the castings from CMN. (*Id*. at ¶ 10.) In doing so, it intentionally interfered with Johnstown's performance under the Supply Agreement without justification by wrongfully interposing itself into the contractual relationship between Bral and Johnstown. (*Id*. at ¶ 15.) These actions were undertaken with the intent to injure Bral's business. (*Id*. at ¶ 16.) CMN's intentional tortious interference with the Supply Agreement between Bral and Johnstown has caused Bral substantial injury in excess of $75,000. (*Id*. at ¶ 17.)

Contrary to CMN's arguments, the foregoing allegations, presumed true for purposes of the Motion, sufficiently plead a claim for tortious interference with a contractual relationship against CMN. That claim is separate from and independent of any claims that Bral may have against Johnstown and may be maintained by Bral without joining Johnstown as a party to this action or awaiting the outcome of any litigation Bral may or may not bring against Johnstown. There is, in short, no basis for dismissing the Complaint.

III. **LAW AND ARGUMENT**

    A. **CMN's Motion to Dismiss For Failure to State a Claim under Rule 12(b)(6) Must Be Denied because Bral Alleged Facts in Support of Each Element of Its Claim for Tortious Interference with a Contract.**

The purpose of a motion to dismiss made pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the complaint, not to decide its merits. *Held v. Allied Pilots Ass'n.*, 497 F.Supp.2d 922, 927 (N.D. Ill. 2007) (*citing Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990)). The "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to

offer evidence to support the claims[.]" *Cole v. U.S. Capital*, 389 F.3d 719, 724 (7th Cir. 2004), (*citing Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974)).  Accordingly, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor, *McCullah v. Gadert,* 344 F.3d 655, 657 (7th Cir. 2003), and does not look outside the four corners of the complaint in deciding such motion.  *Rockstead v. City of Crystal Lake*, 431 F.Supp.2d 804, 806 (N.D. Ill. 2005).  It cannot grant the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957).

In order to state a valid claim for tortious interference with a contractual relationship upon which relief may be granted, Bral must allege: (1) the existence of a valid and enforceable contract between Bral and Johnstown; (2) knowledge of this contractual relationship on the part of CMN; (3) the intentional and malicious inducement of a breach of the contract by CMN; (4) a subsequent breach by Johnstown resulting from CMN's conduct; and (5) damages to Bral resulting from such breach.  *Europlast, Ltd. v. Oak Switch Sys., Inc.*, 10 F.3d 1266, 1273 (7th Cir. 1993).  *See also HPI Health Servs., Inc. v. Mt. Vernon Hosp., Inc.,* 131 Ill.2d 145, 154-55, 545 N.E.2d 672, 676 (Ill. 1989).  It need not allege detailed facts supporting each such element but is required to present "'only a short and plain statement of the claim showing that the pleader is entitled to relief'" which places CMN on notice of the basis for the claim.  *Held.*, 497 F.Supp.2d at 927 (*quoting Erickson v. Pardus,* __ U.S. __, 127 S.Ct. 2197 (2007)).  The facts alleged in Bral's Complaint are more than sufficient to meet these standards with respect to each required element.

CMN, however, argues that the Complaint should be dismissed because Bral has not alleged some form of improper conduct on the part of CMN and asserts that it was justified in

inducing Johnstown to breach the Supply Agreement. (Memorandum at pp. 2 and 12.) It also contends that the factual allegations in the Complaint and the documents attached to it do not "allow one to know if a breach of contract occurred." (Memorandum at pp. 2 and 13.) Finally, CMN claims that Bral's "allegations do not support a claim that CMN knowingly induced Johnstown to breach the Agreement." (Memorandum at p. 13.) These arguments are without merit, seeking to impose pleading requirements that simply do not exist. Bral has sufficiently pleaded the necessary elements to state a claim for tortious interference with a contractual relationship, mandating denial of the Motion.

> 1. *The Complaint Sufficiently Alleges CMN's Intentional, Wrongful, and Malicious Inducement of Johnstown's Breach of Agreement with Bral.*

Bral has sufficiently alleged CMN's wrongful, unjustified and malicious interference with the Supply Agreement. CMN asserts that Bral must allege a wrongful conduct on the part of CMN in order to state a claim for tortious interference and that fair business competition permits CMN to intentionally interfere with the Agreement.[1] However, to state a claim for tortious interference with a contract, a plaintiff is not, in the first instance, required to plead facts showing lack of justification on the part of the defendant as a *per se* element of the tort when no privilege to interfere is apparent on the face of the complaint; rather, a plaintiff is required to allege only that the defendant intentionally induced another to breach a contract with plaintiff. *Roy v. Coyne*, 259 Ill. App. 3d 269, 279-82, 630 N.E.2d 1024, 1031-34 (Ill. App. 1994). *See also Emery v. Northeast Ill. Regional Commuter R.R.*, 2003 WL 22176077 at *9, n. 9 (N.D. Ill. Sept.

---

[1] In support of its argument that Bral must allege facts to show that CMN's conduct was intentional and improper, CMN cites to *La Rocco v. Bakwin*, 108 Ill. App. 3d 723, 730 (Ill. App. 1982). CMN analyzes seven factors in its attempt to show that CMN was privileged to interfere with the Agreement. However, *La Rocco* concerned an analysis of a motion for summary judgment and whether there was enough evidence to support a finding that the conduct was improper. *La Rocco* does not outline what must be plead in order to state a claim for tortious interference with a contract and therefore has no impact on the court's determination here.

18, 2003) (if "the defendant's conduct 'does not invoke a privilege, it is the defendant's burden to plead and prove justification as an affirmative defense'"; *quoting Roy*); *Faith Freight Forwarding Corp. v. Ruiz*, 1997 WL 159207 at *6 (N.D. Ill. March 24, 1997) ("the plaintiff does not have the burden of pleading the lack of a privilege or the 'lack of justification' for a defendant's conduct"; *citing Roy*).

The *Roy* court determined that because justification is an affirmative defense, the burden of pleading and proving it rests with the defendant. *Id.* (*citing Agrimerica, Inc. v. Mathes*, 199 Ill.App.3d 435, 449-50, 557 N.E.2d 357, 367 (1990)). The *Roy* court held "we see no basis for imposing on plaintiffs an obligation to anticipate such a defense by stating in their complaint that defendants acted without justification." *Id.* The *Roy* court recognized an obligation upon a plaintiff to plead that the defendant acted unjustifiably in only limited circumstances:

> Where the complaint establishes the existence of a privilege, the plaintiff must plead and later prove that defendant acted unjustifiably, *i.e.* inconsistent with his privilege. However, if the complaint may not fairly be said to introduce the existence of a recognized statutory or common law privilege, it is not the duty of the plaintiff to plead and prove lack of justification, but **it becomes the defendant's burden to plead and prove the privilege as an affirmative matter**, for there may be no way for a plaintiff to know in advance whether the defendant enjoys a privilege or, indeed, whether he will ever claim that he does.

*Roy*, 259 Ill.App.3d at 283, 630 N.E.2d at 1033-34 (emphasis supplied). *See also Williams v. Shell Oil Co.*, 18 F.3d 396, 402-403 (7th Cir. 1994) ("where a defendant's conduct is alleged to be privileged, it is the plaintiff's burden to plead and prove that the defendant's conduct was unjustified or malicious").

In the instant case, no privilege on the part of CMN can be discerned from the facts alleged in the Complaint. CMN claims that its intentional interference with the contractual relationship between Bral and Johnstown was "privileged" solely as a matter of competition. However, "when a defendant intentionally interferes with the plaintiff's existing definite term

contract, the fact that his actions were taken for competitive purposes will by itself serve as a justification for the interference. . . ." 1 BUSINESS TORTS, Interference with Contract Relations § 11.04[3][c] at 11-81 (2003) (*citing* RESTATEMENT (SECOND) OF TORTS § 768 comment a (1979)). Accordingly, "[w]hen a plaintiff pleads that the defendant wrongfully interfered with the contract, no further allegation is required. While interference with a business expectancy in the absence of a binding contract may be privileged where it subserves business competition, interference that induces a breach of a contract where there is a binding contract is not privileged." *Film and Tape Works, Inc. v. Junetwenty Films, Inc.*, 856 N.E.2d 612, 619 (Ill. App. 2006) (*citing Soderlund Brothers, Inc. v. Carrier Corp.*, 278 Ill.App.3d 606, 615, 663 N.E.2d 1, 8 (Ill. App. 1995)). *See also Belden Corp. v. InterNorth, Inc.*, 90 Ill.App.3d 547, 551, 413 N.E.2d 98, 101 (Ill. App. 1980) ("the sacrosanct contractual relation takes precedence over the conflicting rights of any presumptive interferor, including his right to compete and his own prospective advantage").

The facts alleged by Bral simply do not give rise to any inference that CMN might have a defense of "privilege." The Supply Agreement provided that the exclusive supply relationship between Bral and Johnstown was for a definite term, extended by amendment to December 31, 2007. (Compl. at ¶ 8.) It knew of the exclusive dealing provisions of that contract no later than June 2004. (*Id*. at ¶ 14.) It knew the prices at which Bral had agreed to sell the Exclusive Parts to Johnstown. (*Id*. at ¶ 9.) In other words, CMN actively (and successfully) solicited Johnstown to purchase the castings from CMN with full knowledge that Johnstown was required to order all of its castings from Bral for a specified term. (*Id*. at ¶ 10.) No clearer case of "unprivileged" conduct can be asserted. CMN's knowledge of the exclusivity of the Supply Agreement and that

it was for a definite term is more than sufficient to support Bral's allegations that CMN intentionally, maliciously and unjustifiably induced Johnstown to breach the Supply Agreement.

### 2. *The Complaint Sufficiently Alleges a Breach of Contract by Johnstown*

The factual allegations contained in the Complaint plainly demonstrate that Johnstown breached its exclusive dealing agreement with Bral. Bral specifically alleges that: (a) pursuant to the Supply Agreement, Johnstown was to purchase all of its required Exclusive Parts from Bral (Compl. at ¶ 6); (b) Johnstown was permitted to develop a relationship with another supplier for only very limited purposes, placing Exclusive Parts it might acquire from another manufacturer or supplier on not more than five railroad cars in total and for testing purposes only (*Id*. at ¶ 7); and (c) Johnstown began ordering and purchasing castings from CMN for use in the manufacture of railroad cars within months of Bral and Johnstown executing the Supply Agreement, acquiring no less than 3,884 sets of CMN Violating Parts by November 2007 and installing such parts on no less than 5,000 railcars. (*Id*. at ¶¶ 11 and 12.) These allegations expressly plead a breach of the contract by Johnstown.

Ignoring these allegations, CMN theorizes that Bral and Johnstown may have entered into additional agreements that negated the exclusive dealing provisions of the Supply Agreement, pointing to section 11 of that contract. (Memorandum at p. 13.) That section provides that if Johnstown's production requirements exceeded twelve complete railcar sets a day, such requirements would be the subject of negotiations between Johnstown and Bral and would be set forth in a written agreement of the parties. (*See* Compl. at Ex. A, § 11.) CMN theorizes that any such "additional" agreement "may or may not include the exclusivity provision" contained in the Supply Agreement. (Memorandum at p. 13.) The fundamental problem with such conjecture is, of course, that no such "additional" agreement is alleged in the Complaint. CMN, in essence, argues that Bral was required to plead a negative, i.e., that

Johnstown's production requirements did not exceed twelve railcars a day and that no "additional" agreement was ever entered into by the parties or, if such agreement was executed, that it did not negate the exclusive dealing provisions of the Supply Agreement.

No such "negative" pleading requirement is imposed upon a plaintiff. Bral has unquestionably alleged specific facts showing the existence of a valid and binding contract between Bral and Johnstown and a breach of that contract on the part of Johnstown that was induced by CMN. It need do no more. CMN will have the opportunity to take discovery on whether its specious musings regarding the existence and terms of any "additional" agreements negating the exclusivity provisions of the Supply Agreement are correct. Such theorizing does not, however, provide a basis for dismissal of the Complaint for failure to state a claim when the facts pleaded are plainly sufficient to maintain an action for intentional interference with the contract alleged.

> 3. *The Complaint Sufficiently Alleges that CMN Knowingly Induced Johnstown to Breach the Agreement*

CMN finally concludes that Bral has failed to allege facts showing that CMN knowingly induced Johnstown to breach the Supply Agreement. This contention is simply nonsensical in light of the allegations contained in the Complaint. Specifically, Bral alleges that:

- CMN knew of the Agreement between Bral and Johnstown. (Compl. at ¶ 9.)
- CMN knew of the Agreement and its exclusive dealing provisions no later than June 2004. (*Id.* at ¶ 14.)
- CMN actively solicited Johnstown to purchase the castings from CMN with full knowledge that Johnstown was required to order all of its castings from Bral for a specified term and, in doing so, CMN offered castings to Johnstown at prices below those that had been agreed to by Bral and Johnstown with the intent that such lower prices would induce Johnstown to breach its contract with Bral. (*Id.* at ¶ 10.)

- Despite CMN's knowledge of the exclusive nature of the Agreement, it intentionally interfered with the Agreement without justification by wrongfully interposing itself into the relationship between Bral and Johnstown. (*Id*. at ¶ 15.)

These allegations are more than sufficient to allege that CMN knowingly and maliciously induced Johnstown to breach its contract with Bral. In reviewing Bral's Complaint, this court must come to the conclusion that Bral sufficiently pleads facts in support of each element of its tortious interference claim.

### B. CMN's Motion to Dismiss for Failure to Join an Indispensable Party Should Be Denied

CMN also moves to dismiss Bral's Complaint pursuant to Fed.R.Civ.P. 12(b)(7) for failure to join an indispensable party. CMN argues that Johnstown should be deemed an indispensable party under Fed.R.Civ.P. 19(b). (Memorandum at p. 5) It offers absolutely no authority in support of this proposition nor can it. There is no requirement that in an action for intentional interference with contract the party which was induced to breach the underlying agreement must be made a party to that litigation. Bral is not required to sue Johnstown at the same time and in the same action that it sues CMN; in fact, Bral is not obligated to sue Johnstown at all. Johnstown is not even a necessary party to this litigation, let alone an indispensable party under Fed.R.Civ.P. 19(b).

In considering a motion to dismiss for failure to join an indispensable party under Rule 12(b)(7), the Court must first determine if the absent party is a necessary party pursuant to Fed.R.Civ.P. 19(a). *Davis Cos. v. Emerald Casino, Inc.,* 268 F.3d 477, 481 (7th Cir. 2001). *See also Temple v. Synthes Corp.,* 498 U.S. 5, 8, 111 S.Ct. 315, 316 (1990) (no inquiry under Rule 19(b) is necessary or appropriate when the threshold requirements of Rule 19(a) have not been satisfied). A person is deemed to be a necessary party and thus subject to joinder "if feasible" if:

>   (1) in the person's absence complete relief cannot be accorded among those already parties or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a).  CMN contends that Johnstown is a necessary party to this action because it "has an interest related to the subject of this case, namely, defending against Bral's claim that Johnstown breached the Agreement." (Memorandum at p. 5.)  Yet Johnstown has made no such claim as required under the rule.  CMN's assertion of Johnstown's interest is, in fact, entirely conjectural – Johnstown may have absolutely no interest in defending against a claim by Bral that Johnstown breached the Supply Agreement unless and until Bral asserts such claim in litigation.

Moreover, a person's mere interest in the outcome of an action is not sufficient for a determination that such person is to be joined as a party "if feasible." *Klaff v. Wieboldt Stores, Inc.*, 1988 WL 142163 at *3 (N.D. Ill. Dec. 23, 1998).  Nothing that will or could occur in this litigation will in any way impede or impair Johnstown's ability to defend itself should Bral decide to bring an action against it, nor will a judgment in favor of Bral against CMN subject Johnstown to multiple or inconsistent obligations.  *See Hammond v. Clayton*, 83 F.3d 191, 195 (7th Cir. 1996) (second prong of Rule 19(a) requires that the interests of the putative absent party be prejudiced by nonjoinder, not simply that they be related to the subject matter of the action).[2]

Simply put, even if Bral might decide at some point in the future that it wishes to pursue one or more causes of action against Johnstown, that fact does not convert Johnstown into a

---

[2] Contrary to CMN's assertions, it may very well be in Johnstown's interest to have Bral recover its compensatory damages from CMN based on the latter's tortious conduct, thereby precluding Bral from recovering against Johnstown itself on a contract claim.

necessary, let alone an indispensable party to this action.  Both CMN and Johnstown may be held liable for the damages Bral suffered as a result of their respective conduct.  Their joint liability for those injuries does not, however, mean that Bral is unable to pursue its claims against one of those parties without joining the other in the same action.  It is well established that neither joint tortfeasors nor joint obligors are considered indispensable parties to an action.  *Klaff*, 1988 WL 142163 at *2 (citing cases).  *See also Temple,* 498 U.S. at 7, 111 S.Ct. at 316 ("it has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit").  "The victim of a tort is entitled to sue any of the joint tortfeasors and recover his entire damages from that tortfeasor. The defendant may have a right to contribution (i.e., to a sharing of the pain) from the other tortfeasors, but the victim is not required to sue more than one of his oppressors."  *Salton, Inc. v. Philips Domestic Appliances and Personal Case B.V.,* 391 F.3d 871, 877 (7th Cir. 2004).

There is, in short, no basis for compelling the joinder of Johnstown in this action.  Bral has a cause of action against CMN sounding in tort that is separate and independent from any claim Bral may decide to assert against Johnstown for contractual breach.  Nothing in Rule 19 mandates Johnstown's joinder as a party or requires that this action be dismissed.  CMN's attempt to suggest otherwise, without citation to a single tortious interference case supporting its assertions, is specious.

    **C.**    **Bral Has A Present Actual Right To Bring Its Tortious Interference Claim Against CMN**

CMN asserts at the outset of its Memorandum that the Complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) because the tortious interference claim is not "ripe" for adjudication.  It poses a series of future possibilities and contingencies in support of this argument, contending that Bral's ability to maintain this action is dependent on the outcome of

negotiations with Johnstown and that, **if** Bral should decide to bring a breach of contract against Johnstown, "Bral **may not** be able to establish a breach" and such litigation "**could** result in a judgment in favor of Johnstown. . . ." (Memorandum at pp. 3-4, emphasis supplied.) In doing so, CMN attempts to turn the doctrine of ripeness on its head.

Undoubtedly, "[a] claim is unripe when critical elements are contingent or unknown." *Marusic Liquors, Inc. v. Daley*, 55 F.3d 258, 260 (7th Cir. 1995). *See also Asad v. Hartford Life Ins. Co.*, 116 F.Supp.2d 960, 963 (N.D. Ill. 2000) ("A claim is not ripe if it rests upon contingent future events that may not occur as anticipated or may not occur at all."). However, nothing about Bral's claim against CMN rests upon events or litigation that may or may not happen in the future. Every allegation made in the Complaint concerns prior conduct or past events. Its tort claim against CMN is predicated on its actual present rights, not on some future rights that may or may not mature. *See Maryland Ins. Co. v. Attorney's Liability Assur. Society, Ltd.*, 748 F.Supp. 627, 630 (N.D. Ill. 1990) (distinction between possible future rights and actual present rights is the "bright line . . . between nonjusticiability and justiciability in Article III terms").

By contrast, the contingencies which CMN speculates may occur all give rise to defenses that CMN **might** be able to assert to this action in the future. For example, it may be possible, as CMN hypothesizes, that Bral at some point in the future negotiates a settlement with or obtains a judgment against Johnstown that makes it "whole." **If** that were to occur, it is possible that CMN would argue that Bral cannot obtain a "double" recovery of its damages. But, since such event has not occurred, no such defense exists. Nor need Bral wait to see if such event does occur before commencing suit against CMN; as demonstrated above, it has an independent cause of action against CMN upon which it may **now** seek to recover its damages for CMN's wrongful conduct since there is absolutely nothing contingent or unknown about the injury it suffered.

Likewise, **if** Bral were to bring an action against Johnstown for breach of contract and **if** it were determined in that action that no breach had occurred, then CMN might seek to assert that such determination precludes further prosecution of this action. But the mere possibility that those events **might** occur does not preclude Bral from maintaining this action. Its ability to state a claim and proceed with an action against CMN **today** is in no way dependent on whether it brings and prevails in an action against Johnstown that is not now and may never be pending (see discussion, supra, at p. 12), just one of many facts rendering *Cipa Mftg. Corp. v. Allied Golf Corp.,* 1995 U.S. LEXIS 764 (N.D. Ill. June 1, 1995), inapposite.[3]

Bral is not under any obligation to commence and conclude litigation against Johnstown before it can proceed with its present claim against CMN. It seeks to vindicate a present actual right it now possesses against CMN. CMN's attempt to suggest otherwise, predicated on speculation about what may happen in the future to defeat Bral's claim, is without merit. This case is ripe for adjudication and presents a real, live "controversy." There is simply no reason for the court to dismiss the Complaint based on a supposed absence of subject matter jurisdiction.

---

[3] Indeed, CMN's entire discussion of *Cipa* is off point since the decision cited addressed whether the defendant could plead and maintain affirmative defenses for setoff and recoupment against the plaintiff, not, as CMN asserts, whether a permissive counterclaim for recoupment was premature.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons and authorities cited, Bral respectfully urges the Court to deny CMN's Motion to Dismiss and grant Bral such other and further relief as the Court finds just and equitable.

**BRAL CORPORATION**

By: /s/ Richard P. Darke
    One of its Attorneys

Richard P. Darke (ARDC #6255810)
rpdarke@duanemorris.com
Duane Morris LLP
227 West Monroe St., Suite 3400
Chicago, IL 60606
(312) 499-6700
(312) 499-6701 (fax)

and

Mark A. Phillips (0047347)
mphillips@bfca.com
Tamara L. Karel (0078942)
tkarel@bfca.com
BENESCH, FRIEDLANDER,
  COPLAN & ARONOFF LLP
2300 BP Tower
200 Public Square
Cleveland, Ohio  44114
(216) 363-4500
(216) 363-4588 (fax)

## **CERTIFICATE OF FILING/SERVICE**

      I, Richard P. Darke, an attorney, certify that on March 17, 2008, I caused the foregoing document to be electronically filed with the Clerk of the Court, using the Court's CM/ECF system, which will send notice of the filing to the following CM/ECF participants:

James R. Dashiell
Dashiell Law Offices LLC
10 S. LaSalle St. – Suite 3500
Chicago, IL 60603
312-920-9118
jdashiell@dashielllaw.com


                                              /s/ Richard P. Darke
                                              Richard P. Darke (ARDC #6255810)
                                              rpdarke@duanemorris.com
                                              Duane Morris LLP
                                              227 West Monroe St., Suite 3400
                                              Chicago, IL 60606
                                              (312) 499-6700
                                              (312) 499-6701 (fax)

                                              and

                                              Mark A. Phillips (0047347)
                                              mphillips@bfca.com
                                              Tamara L. Karel (0078942)
                                              tkarel@bfca.com
                                              BENESCH, FRIEDLANDER,
                                                 COPLAN & ARONOFF LLP
                                              2300 BP Tower
                                              200 Public Square
                                              Cleveland, Ohio  44114
                                              (216) 363-4500
                                              (216) 363-4588 (fax)

                                              *Counsel for Plaintiff, Bral Corporation*