IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRAL CORPORATION, an Ohio corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 07 C 7029 |
| CMN COMPONENTS, Inc., an Illinois corporation, | ) ) ) | Judge Gettleman |
| | ) ) | Magistrate Judge Denlow |
| Defendant. | ) | |

### DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS UNDER RULES 12(b)(1), (6) AND (7)

Defendant, CMN Components, Inc. ("CMN"), replies to Plaintiff's Opposition to Defendant's Motion to Dismiss (sometimes hereinafter "Opposition brief" or "Plaintiff's response") as follows:

### I.   PRELIMINARY STATEMENT

Plaintiff, Bral Corporation ("Bral"), argues that because it has not sued Johnstown for breach of contract, there is no pending action in another jurisdiction, the outcome of which would cast uncertainty as to whether it has a viable claim for tortious interference with an existing contract against CMN. Therefore, it has an existing right to sue CMN, and its claim is not premature (yet). It further characterizes CMN and Johnstown as joint tortfeasors with respect to Bral (which, of course, they are not), and then posits that, since an injured plaintiff can elect to sue one joint tortfeasor and not the other, it does not have to join Johnstown as a defendant in this suit.

The common flaw with both of these arguments, and the unique aspect of this case, is that Bral has made clear that it is not electing to sue CMN instead of Johnstown. Rather it seeks to "have its cake and eat it too," and claims a right to sue both of them in separate actions.[1] While Bral controls its own destiny as to whether or not it will sue Johnstown, this Court and CMN are left guessing as to whether or not there will be another action in Pennsylvania, which may be determinative of whether or not the claim against CMN is viable. Instead of removing any uncertainty of whether this cause of action can exist, it adds another layer of uncertainty. This peculiar circumstance, of Bral's own design, renders justiciability even more remote, not less so.

Similarly, while a plaintiff may elect to sue only one of two tortfeasors, (s)he may not do so and then sue the second tortfeasor in another jurisdiction for the same injuries arising from the same tort. Issue preclusion and the most fundamental tenants of judicial efficiency would not allow this. Unless Bral is unequivocally committing to this Court and to CMN that it will not sue Johnstown for breach of contract, which it must do in Pennsylvania, the tortfeasor analogy only underscores the need for joinder under Rule 19(a) and dismissal under Rule 19(b).

Perhaps this is why Plaintiff's memorandum in opposition makes no attempt to address the practical considerations which this Court is required to evaluate and apply in resolving the issues of jurisdiction and dismissal under Rule 19.

---

[1] Bral has not overtly stated that it reserves its right to sue Johnstown in Pennsylvania, but it is implicit throughout, and alluded to in, its Opposition brief. See, e.g., page 11 ("[E]ven if Bral might decide at some point in the future that it wishes to pursue one or more causes of action against Johnstown…" Also, Bral remains in negotiations with Johnstown over its breach of contract claim. Mediation is still scheduled to occur, although it has been continued to April 11, 2008. (See the Supplemental Affidavit of Andrew Fletcher, attached hereto as Exhibit A.)

Should this Court find it necessary to address the Rule 12(b)(6) motion, the applicable state law is addressed below.

## II.  JURISDICTION

The authority cited in the Opposition brief supports the conclusion that this action is premature. Bral concedes, as it must, that "[a] claim is unripe when critical elements are contingent or unknown." (Cites omitted.) (Opposition brief, p. 13)  The critical elements here that are contingent and unknown are whether or not Bral's contract with Johnstown was breached and whether it has sustained any damages as a consequence.  The uncertainty, and resulting jurisdictional flaw, emanates from the fact that Bral is not claiming merely that it can litigate these issues in this case.  Rather, Bral is claiming that it can litigate these issues both here and in the Western District of Pennsylvania.

This case cannot be allowed to proceed only to be a waste of time because there is a finding in Pennsylvania that a critical element of this case does not exist. *Cipa Manufacturing v. Allied Golf,* 1995 U.S. LEXIS 7604 (N.D. Ill. 1995) is exactly on point.[2]  When an action depends on the outcome of another lawsuit, it does not come into existence until the action on which it is based is concluded.

Any additional uncertainty as to whether or not Bral will settle with, or file suit against, Johnstown is within Bral's control.  Its decisions as to where and when to file lawsuits, and its desire to be able to sue for the same wrong in two different forums, do not vest this Court with jurisdiction that

---

[2]  Footnote 3 of the Opposition brief contains a mischaracterization of *Cipa*.  That footnote states that the court found that a permissive counterclaim of recoupment was held to be premature.  This is not correct.  Recoupment is the equivalent of a **compulsory** counterclaim, and the court so held.  This is significant, since a compulsory counter-claim must be brought during the primary action unless jurisdiction is lacking.

3

otherwise would not exist. This is particularly true when the added uncertainty is only the burden of this Court and CMN.

Furthermore, dismissing this action for want of jurisdiction imposes no hardship on Plaintiff. As noted in Defendant's initial memorandum in support of its motion, if Plaintiff is unable to settle with Johnstown, it can bring suit against both Johnstown and CMN in a single lawsuit (necessarily in Pennsylvania by virtue of the forum-selection clause). This would present a ripe controversy relating to the breach of contract claim between Bral and Johnstown, and CMN could be joined in that action.

Although not cited by Plaintiff, the undersigned is obligated to advise the Court of *J. D. Edwards v. Podany,* 1995 U.S. Dist. LEXIS 1063 (N.D. Ill. 1995), which was found while preparing this reply memorandum. (LR 83.53.3 (a) (3); Rule 3.3 (a) (3) of the Illinois Rules of Professional Conduct) Since the opinion is unpublished, a copy is attached as Exhibit B. That case, however, is not consistent with other authority within this district and is distinguishable from the facts presented here, since a stay was available under the Federal Arbitration Act (the "FAA").

In *Edwards*, the plaintiff, J. D. Edwards & Co., had entered into a contract with SNE Industries, which Edwards claimed SNE breached. The breach of contract claim was subject to a pending arbitration when Edwards sued Podany and Mercer Management Consulting for tortious interference with the Edwards/SNE contract. Defendants moved to dismiss, asserting that the claim against them was not ripe, since necessary elements of the claim were being determined in arbitration. Alternatively, the defendants moved to stay the litigation under Section 3 of the FAA.

4

The District Court held that the existence and breach of a contract were critical elements of the case before it. The court declined to dismiss the case, but stayed the action pending the arbitration, thereby avoiding duplicative and parallel litigation.

The sole authority relied on by the District Court for not dismissing the case was *Mages v. Thrifty,* 916 F. 2d 402 (7th Cir. 1990). In *Mages,* a promissory note representing the balance due to the plaintiff for the purchase of a business was not paid. The resulting contract dispute was subject to arbitration. The plaintiff also sued a guarantor on the note who sought a stay of proceedings pending resolution at arbitration of whether the underlying debt was owing. The Court of Appeals held that a stay under Section 3 of the FAA was appropriate, but neither the court nor the parties raised a question of jurisdiction.

Another court in this district has explained that when a higher court fails to address jurisdiction, its silence must not be construed as precedential. This is true even though the courts have an independent duty to raise and address that issue. *Maryland Insurance v. Attorneys Liability Assurance,* 748 F. Supp. 627, 631 (N.D. Ill. 1990). ("[E]ven if it were assumed … that there was indeed a threshold jurisdictional flaw … no inference can be drawn from [the Court of Appeals'] failure to spot and point out that defect.") The District Court relied on and quoted from the United States Supreme Court, *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89 (1984), quoting *Hagans v. Lavine,* 415 U.S. 528, 533 n. 5 (1974):

> "When questions of jurisdiction have been passed on in prior decisions *sub silentio,* this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us."

748 F. Supp at 631

The Supreme Court chose its words carefully, as an inference is generally proper when a matter is passed on *sub silentio*. *See, e.g., Black's Law Dictionary,* Fifth edition ("Passing a thing *sub silentio* may be evidence of consent."). However, silence on jurisdiction must carry no such inference.

Nonetheless, the wisdom of the *Edwards* court is not being questioned, as the practical effect of the stay was the same as if it had dismissed the case without prejudice for lack of subject matter jurisdiction. The practical concerns of wasteful duplication of effort and the risk of inconsistent results were avoided.

### III.   RULE 19 DISMISSAL

Plaintiff's response does not explain why Johnstown's interests are not harmed "as a practical matter," except to speculate that Bral might not sue Johnstown – perhaps depending on how things proceed in this court. (Opposition brief, p. 11, fn 2)  Bral is keeping its options open and still claims a right to sue Johnstown separately.   Plaintiff does not address the potential, adverse consequences to CMN.  More importantly, Plaintiff does not address the broader concerns of avoiding waste of judicial resources, duplicative litigation and providing complete relief in a single action. *Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d* § 1604.  Nor does Plaintiff acknowledge that it suffers no harm in the event of a Rule 19 dismissal, since it can join CMN and Johnstown in an action in the Western District of Pennsylvania.

The cases relied upon by Plaintiff are easily distinguished from this cause.[3]  In *Klaff v. Wieboldt Stores,* 1988 LEXIS 14988 (N.D. Ill. 1988), the court did a Rule 19 analysis, but for the purpose of

---

[3]   Plaintiff cites *Davis v. Emerald Casino,* 268 F. 3d 477 (7th Cir. 2001) and *Temple v. Synthes,* 498 U.S. 5 (1990) for the proposition that one must first determine if an absent party is necessary under Rule 19(a) before addressing indispensability, which Defendant agrees is correct.

6

determining if two of the defendants were entitled to a stay after their co-defendant entered bankruptcy. (Since *Klaff* is unpublished, a copy of the opinion is attached as Exhibit C.)  The court acknowledged the "requisite balancing of competing interests." (Ex C at 15 and 16)  The harm to the plaintiff would have been unacceptable, as there was "no indication that resolution of [the] bankruptcy proceedings [would] occur in the immediate future." This was aggravated by the fact that the parties had been on the verge of trial when the bankruptcy occurred. (Ex C at 13, fn 5)  Further clouding the Rule 19 analysis, the court noted that it lacked authority to "grant an indefinite stay, conditioned on lifting the stay upon resolution of the bankruptcy proceedings." (Ex C at 14 and 15)  Duplicative litigation was not a legitimate concern, because this has been congressionally sanctioned as "a direct byproduct of bankruptcy law."  (Ex C at 13)

In *Hammond v. Clayton,* 83 F. 3d 191 (7th Cir. 1996), the plaintiff attempted to counter a motion by two of the defendants to dismiss his claim against them for tortious interference with a contract by asserting that those defendants were necessary parties under Rule 19(a).  The court, however, found the plaintiff's claim for tortious interference to be so "fictitious" that it lacked subject matter jurisdiction over the attempted action.  While the court gave a fine analysis of Rule 19(a), it almost goes without saying that one need not join an absent party against whom there can be no claim.

It is worth noting that the *Hammond* court acknowledged that "Rule 19 is designed to protect the interests of absent persons, as well as those already before the court, from duplicative litigation, inconsistent judicial determinations, or other practical impairment of their legal interests," and that "one of the purposes of Rule 19 is to avoid the waste of judicial resources." *Hammond,* 83 F. 3d at 195

and 196 (*citations omitted*)  These are the type of general considerations that the Opposition brief does not address.

*Salton v. Philips*, 391 F. 3d 871 (7th Cir. 2004) is cited for the limited proposition that one need not sue all potential joint tortfeasors (Opposition brief, p. 12).  While true, this principle has no application in this case, since Bral is reserving its right to sue Johnstown as well as CMN in another U.S. court.  *Salton* otherwise does not apply, if for no other reason than its facts are exceptionally convoluted and unique.  (The court acknowledged that, "There is much that is puzzling about this multiplex litigation." *Salton,* 391 F. 3d at 875) The court also observed that the standard of review for Rule 19 dismissals "is deferential because of the fact-intensive and multi-faceted character of the inquiry." *Salton,* 391 F. 3d at 877.  The original plaintiff ended up supporting a Rule 19 dismissal, while the defendant sought to keep its counterclaim viable in Chicago.  This extraordinary peculiarity was very significant, since it meant the court could disregard any claimed prejudice to existing parties, which it did.  The absent party was a foreign corporation based in Hong Kong, and two related lawsuits were commenced in Hong Kong.  None of the attorneys could enlighten the court about Hong Kong's court system or laws.  This was after Hong Kong had been reabsorbed into the whole of China, making it impossible for the court to assess the extent to which the counter-plaintiff would be prejudiced by a finding of indispensability, which given the necessary balancing of interests, effectively precluded such a finding.  Since there was no possibility of duplicate litigation within the United States, or in a court system whose laws and procedures were known, this critical consideration was rendered moot.

**IV.   FAILURE TO STATE A CLAIM**

**A.     Bral Has the Burden of Pleading and Proving that CMN's Actions Were Unjustified**

Bral contends that CMN must plead and prove justification as an affirmative defense to intentional interference with a contract. In support of its argument, Bral relies primarily on *Roy v. Coyne*, 259 Ill.App.3d 269, 630 N.Ed. 2d 1024 (1994), stating that, "a plaintiff is required to allege only that the defendant intentionally induced another to breach a contract with plaintiff." (Opposition brief, p.5). Not only does this mischaracterize the holding in *Roy*, but Bral's reliance on *Roy* is misplaced.

The question before the court in *Roy* was "whether the third-amended complaint sufficiently alleged the 'intent' or 'purpose' element of [interference with a contract,]" not whether the plaintiff was required to plead lack of justification. *Roy*, 259 Ill. App. 3d at 276. Therefore, although the *Roy* court pontificates at length at to whether the plaintiff was required to plead lack of justification, as the dissent noted, that portion of the majority's opinion amounts to mere "*obiter dicta*" and need not be considered persuasive authority by this court. *Roy,* 259 Ill.App.3d at 289. Furthermore, more recent case law, as will be discussed below, directly contradicts the plaintiff's interpretation of *Roy*.

That being said, *Roy*'s dicta is actually supportive of CMN's position. First, *Roy* cites to the five elements of tortious interference of a contract, which includes the third element: "the defendant's intentional **and unjustified** inducement of a breach of the contract…" *Roy,* 259 Ill.App.3d at 275 (emphasis added). Ignoring the plain language of its own citation, however, the court focuses on the defendants' argument – that actual malice must be pled – and uses it as a platform from which to launch its own treatise on the elements of the interference torts. *Roy,* 259 Ill. App. 3d at 276-79. After discussing at length the confusion surrounding the term malice, the court then *sua sponte*, and without explanation, expands its dissertation by claiming that:

9

> Although the appellate court, nearly without exception, has concurred in the belief that a plaintiff must allege, at a minimum, that the defendant acted unjustifiably or stated another way, that the lack of justification is an essential element of the torts of intentional interference with existing contracts… the conclusion is irresistible that it is this allocation of the burden of proof as to justification in Illinois…and not which type of malice a plaintiff must allege that is the fountainhead of the rampant confusion in this area of the law.

*Roy,* 259 Ill.App.3d. at 279.

Although the majority in *Roy* concludes that lack of justification is not always an element of the interference torts, the court ultimately finds "that where the complaint established the existence of a privilege, the plaintiff must plead and later prove that defendant acted unjustifiably." *Roy,* 259 Ill.App.3d at 283. The court, therefore, examined whether the plaintiff's complaint established a privilege and provided two means of analysis in determining whether a complaint does so:

> Under [the] first approach, the court explained that 'the purpose of imposing liability in tort upon persons who interfere with the contractual relations of others is to protect one's interest in his contractual relations against forms of interference, which on balance, the law finds repugnant.' (citations omitted)….Under the second view…one may permissibly interfere in the business relations of another 'where the defendant was acting to protect an interest the law deems to be of equal or great value than the plaintiff's contractual rights.' (citations omitted).

*Roy,* 259 Ill.App.3d at 286.

Presuming for the moment that *Roy*'s rule of law is accurate, the court must first determine if Bral's complaint establishes the existence of a privilege. Bral notably does not apply either analysis to its bald legal conclusion that its own complaint does not establish a privilege. Yet, under either analysis, Bral's complaint clearly establishes that CMN's actions **were** privileged by the privilege of free

competition. Section 766 of the Restatement, comment *m*, clearly states that offering a better bargain is not improper interference (or privileged)[4]:

> A's freedom to conduct his business in the usual manner…is not restricted by the fact that B has agreed to buy similar goods from C. Even though A knows of B's contract with C, he may nevertheless send his regular advertising to B and may solicit business in normal course. This conduct does not constitute inducement of breach of the contract.

Therefore, even following *Roy*, the plaintiff's complaint fails to state a proper cause of action, because Bral's complaint establishes that CMN's conduct was privileged as free competition, and Bral has not pled any facts that CMN's actions were without justification.

As stated, however, the rule articulated in *Roy* is mere dicta should be considered unpersuasive by this court in light of more recent case law and the express language of the Restatement, which states that it is the plaintiff's burden to plead and prove lack of justification. The courts of this district agree with that interpretation of Illinois law: "It is well-established that one who intentionally **and without justification** induces another to breach his contract with a third party will be liable…" *Medline Industries, Inc. v. Maersk Medical Ltd., et al.*, 2004 U.S. Dist. LEXIS 2677 (N.D. Ill. 2004) at 39 (emphasis added). (A copy of the opinion is attached as Exhibit D.)  Similarly, the Seventh Circuit, applying Illinois law, found that the plaintiff must plead that the defendant acted "without just cause." *Fuller v. Chicago College of Osteopathic Medicine*, 719 F.2d 1326, 1333 (7th Cir. 1983).  And in *R.J.N. Corp., v. Schoep's Ice Cream Co. Inc.*, 175 Ill.App.3d 655, 529 N.E.2d 1184 (1st Dist.

---

[4]   An additional problem with *Roy* is that the terms "privilege" and "lack of justification" are used interchangeably.

1988), the Illinois appellate court held that "[l]ack of legal justification is an essential element in stating a cause of action for tortious interference with contractual relations." *R.J.N.,* 175 Ill.App.3d. at 664.

Finally, the full text of Section 766 of the Restatement is worth reciting:

> One who intentionally **and improperly** interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract. (emphasis added).

Since "improperly" is used in conjunction with "intentionally," the law clearly requires more than mere intention alone. It is well-established that the terms "improper," "malicious" and "without justification" are used interchangeably in the body of case law regarding interference torts.. *See e.g., RKI, Inc., v. Steven Grimes, et. al.,* 200 F.Supp.2d 916, 924 (N.D. Ill. 2002) ("Malice does not require ill will … rather, a plaintiff need only assert defendant acted 'intentionally and without just cause.'" (citation omitted)).

For example, this court noted that tortious interference of a contract was adequately pled where the plaintiffs "allege[d] that [the] defendants intentionally and maliciously induced [another] to breach the sales contract **as part of a collusive effort to destroy plaintiffs' business**." *Su Heon Kim, et al., v. Eui Soeb Kim*, 360 F. Supp.2d 897, 903 (N.D. Ill. 2005) (emphasis added). Such facts demonstrate improper (or malicious) conduct or lack of justification. Unjustified interference amounts to actions, which the law finds "repugnant," such as fraud, intimidation and disparagement – not merely offering a lower price with knowledge of a contract. *See, e.g., RKI, Inc.,* 200 F. Supp. 2d at 924 ("One does

not induce another to commit a breach of contract … when he merely enters into an agreement with the other with the knowledge that the other cannot perform both it and his contract with the third person.")

For practical reasons, this law makes sense. To allow litigation to proceed every time a contract was breached because a business allegedly knew of a competitor's contract and offered a better price to its buyers would open a veritable floodgate of litigation in state and federal courts.

Bral has failed to allege facts from which one can infer that CMN's actions were unjustified. The only facts alleged are that CMN knew of the Agreement and caused Johnstown to breach that contract by offering lower prices. This is not enough. As Bral has failed to specifically plead facts which establish CMN acted without justification, it has failed to state a proper cause of action for which relief can be granted and should be dismissed.

B. **Bral Must Allege Facts Which Demonstrate a Breach Per the Terms of the Agreement**

Plaintiff argues that it has adequately pled breach of contract. It has attached to its complaint the Exclusive Supply Agreement (the "Agreement"), which it claims was breached. Contract provisions are not to be read in a vacuum, rather the contract must be read as a whole, and each and every part must be taken into consideration and given effect if reasonably possible. *Int'l Org. Masters, Mates and Pilots of America, Local No. 2 v. Int'l Org. Masters, Mates and Pilots of America, Inc.*, 439 A. 2d 621, 624 (Pa. 1982).[5] The plain language of Section 11 of the Agreement clearly indicates that production requirements under the Agreement were limited to parts necessary for manufacturing 12 railcars per business day. With respect to parts needed beyond that, production requirements were

---

[5] Pennsylvania law applies to the breach of contract aspect of the case because of the choice-of-law provision in the Agreement. (¶22 of exhibit A to Exhibit 1, Def's initial brief)

subject to negotiation between the parties and were to be set forth in a separate written agreement. Whether Bral was to be the exclusive supplier of those additional parts obviously had to depend on whether Bral could meet those additional production requirements. In other words, the Agreement simply does not apply to parts necessary for the production of more than 12 railcars per business day.

Contrary to Bral's assertion, CMN's argument does not require Bral to plead or prove a negative. In order to plead that there was a breach, Bral need only plead that production was limited to 12 railcars per business day, or plead that the production exceeded that amount and attach the additional written agreements that would control – **as per the terms of the contract**.

"[W]here a plaintiff attaches documents to his complaint and relies upon the documents to form the basis of a claim, dismissal is appropriate if the document negates the claim." *Su Heon Kim v. Eiu Soeb Kim,* 360 F. Supp. 2d 897, 901 (N.D. Ill. 2005), *citing Thompson v. Ill. Dept. of Prof. Regulation,* 300 F. 3d 750, 754 (7th Cir. 2002). As currently pled, one cannot determine from the face of Bral's complaint if, in fact, a breach occurred. CMN cannot state its argument more simply.

In addition, Bral does not address CMN's contention that exhibits A and B of the Agreement must be attached to the complaint. CMN, therefore, stands on its original argument in its motion to dismiss. Bral's failure to adequately plead a breach of contract and attach the requisite exhibits to its complaint subjects it to dismissal pursuant to Rule 12(b)(6).

## V. CONCLUSION

For all of the foregoing reasons, Plaintiff's complaint should be dismissed.

Respectfully submitted,

CMN COMPONENTS, Inc.

_____/s/ James R. Dashiell_____
One of its attorneys

### INDEX OF EXHIBITS

**Exhibit A** – Supplemental Affidavit of Andrew Fletcher

**Exhibit B** – *J. Edwards v. Podany,* 1995 U.S. Dist. LEXIS 1063 (N.D. Ill. 1995)

**Exhibit C** – *Klaff v. Wieboldt Stores,* 1988 LEXIS (N.D. Ill. 1988)

**Exhibit D** – *Medline Industries, Inc. v. Maersk Medical Ltd., et al.,* 2004 U.S. Dist. LEXIS 2677 (N.D. Ill. 2004)

James R. Dashiell
Dashiell Law Offices, LLC
Attorneys for the Defendant
10 S. LaSalle St., Suite 3500
Chicago, IL 60603
312-920-9118
6182044

## CERTIFICATE OF SERVICE

I hereby certify that, on March 27, 2008, I served a true and correct copy of **Defendant's Reply Memorandum in Support of Its Motion to Dismiss Under Rules 12(b)(1)(6) and (7)** upon the above listed attorneys by Electronic Case Filing (ECF).

/s/James R. Dashiell