Get a Document - by Citation - 1995 U.S. Dist. LEXIS 1063

Case 1:07-cv-07029 Document 18-3 Filed 03/27/2008 Page 1 of 8

Page 1 of 8

*1995 U.S. Dist. LEXIS 1063, **

J.D. EDWARDS & COMPANY, a Colorado Corporation, Plaintiff, v. RANDY PODANY and MERCER MANAGEMENT CONSULTING, INC., Defendants.

Case No. 94 C 4865

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

1995 U.S. Dist. LEXIS 1063

January 27, 1995, Decided
January 30, 1995, DOCKETED

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant consulting companies brought a motion to dismiss the amended complaint, or in the alternative, to stay proceedings pending arbitration in plaintiff software company's action against them claiming tortious interference with contract and tortious interference with prospective business advantage.

**OVERVIEW:** The software company entered into a contract with a manufacturer to update its computer system. That contract provided for the arbitration. The manufacturer then hired the consulting companies to review the update of the computer system. The software company alleged that the consulting companies induced the manufacturer not to pay over $ 1 million in fees owed under the software agreements. The consulting companies sought to dismiss the complaint on the ground that the software company's claims were not ripe. The court held that the claims for tortious interference with contract and tortious interference with prospective business advantage were ripe, even though two of the elements had to be decided at a separate arbitration proceeding. However, the court held that the lawsuit had to be stayed pursuant to § 3 of the Federal Arbitration Act, 9 U.S.C.S. § 3. The consulting companies were entitled to a stay even though they were not parties to the arbitration agreement and might be directly liable for their tortious conduct vis-a-vis the manufacturer's breach of contract. Thus, the court denied the motion to dismiss, but granted the motion to stay the suit pending arbitration.

**OUTCOME:** The court denied in part and granted in part the consulting companies' motion to dismiss, or in the alternative, to stay proceedings pending arbitration. The motion to dismiss was denied. That part of the motion that sought to stay the proceedings pending arbitration was granted.

**CORE TERMS:** arbitration, lawsuit, software, arbitration agreement, ripe, prospective business advantage, arbitrator, pending arbitration, derivative, tortious interference, intentional interference, referable, franchise, guaranty, future services, management consulting, breach of contract, subject matter, collateral estoppel, intentionally, inducement, arbitrate, breached, sandwich, management team, license, update, Federal Arbitration Act, arbitration clause, arbitration proceeding

**LEXISNEXIS(R) HEADNOTES**

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 1063

Case 1:07-cv-07029    Document 18-3    Filed 03/27/2008    Page 2 of 8

Page 2 of 8

Contracts Law > Breach > General Overview
Torts > Business Torts > Commercial Interference > Contracts > Elements
HN1 Under Illinois law, a plaintiff must prove the following elements to establish a prima facie case for tortious interference with a contractual relationship: 1) the existence of a valid and enforceable contract between the plaintiff and another party; 2) that the defendant was aware of the contractual relationship; 3) an intentional and unjustified inducement of a breach of contract by the defendant; 4) a subsequent breach of contract by the other party caused by the defendant's inducement; and 5) damages.

Torts > Business Torts > Commercial Interference > Prospective Advantage > Elements
HN2 A plaintiff must prove the following elements to establish a cause of action for intentional interference with prospective business advantage: 1) a reasonable expectation of entering into a valid business relationship; 2) defendant's knowledge of the plaintiff's expectancy; 3) defendant's purposeful interference to defeat the expectancy; and 4) damages resulting from the interference. The defendant's interference must be directed at a third party.

Civil Procedure > Justiciability > Case or Controversy Requirements > General Overview
Constitutional Law > The Judiciary > Case or Controversy > Advisory Opinions
Constitutional Law > The Judiciary > Case or Controversy > Ripeness
HN3 Under Article III of the Constitution, federal courts may only adjudicate cases or controversies and may not render advisory opinions. To satisfy the "case or controversy" requirement, a plaintiff must allege that he has sustained or is immediately in danger of sustaining some direct injury. Abstract injury is not enough the threat of injury must be both real and immediate, and not conjectural or hypothetical. Thus, cases are not ripe for determination where the parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts.

Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview
Contracts Law > Contract Conditions & Provisions > Arbitration Clauses
Torts > Procedure > Alternative Dispute Resolution
HN4 Under a common sense reading of § 3 of the Federal Arbitration Act, 9 U.S.C.S. § 3, if the federal action concerns an "issue referable to arbitration" under the terms of the arbitration agreement, the district court must stay the trial until the arbitration has concluded. Accordingly, the threshold determination is whether any of the issues involved in the pending litigation are to be resolved at an arbitration pursuant to a valid arbitration agreement. The key is the relationship between the elements of the alleged tort or contract action and the subject matter of the arbitration clause. If some or all of these issues are the subject of arbitration, then the litigation must be stayed regardless of the whether the party in whose favor the stay is entered is a party to the arbitration agreement.

Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > Stays Pending Arbitration
Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods
International Trade Law > Dispute Resolution > Arbitration
HN5 9 U.S.C.S. § 3 provides in pertinent part: Stay of proceedings where issue therein referable to arbitration. If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of an action until such arbitration has been had in accordance with

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 1063

Case 1:07-cv-07029 Document 18-3 Filed 03/27/2008 Page 3 of 8

Page 3 of 8

the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

**COUNSEL:** For J. D. EDWARDS & COMPANY, a Colorado corporation, plaintiff: Michael J. O'Rourke, Michelle M. Nakfoor, O'Rourke & Griffin, Chicago, IL. Stephen J Baity, Steven L Heisdorffer, Wilson, Godin & Baity, Denver, CO.

For RANDY PODANY, MERCER MANAGEMENT CONSULTING, INC., defendants: Michael C. Cook, David Luther Hartsell, Edward W. Schwartz, McCullough, Campbell & Lane, Chicago, IL.

**JUDGES:** [*1] David H. Coar, United States District Judge

**OPINION BY:** David H. Coar

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Defendants Randy Podany ("Podany") and Mercer Management Consulting, Inc. ("Mercer") have filed a Motion to Dismiss Plaintiff's Amended Complaint or, in the Alternative, To Stay Proceedings Pending Arbitration." Plaintiff, J.D. Edwards & Co. ("JDE") alleges in Count I of its two count amended complaint that defendants intentionally interfered with a contract between JDE and SNE Industries, Inc. ("SNE"); in Count II, JDE alleges that defendants intentionally interfered with its prospective business advantage. Defendant's motion contends that the amended complaint should be dismissed because it is not ripe for adjudication; alternatively, it seeks a stay pending resolution of an arbitration between JDE and SNE concerning whether SNE breached its contract with JDE. This court has jurisdiction over this case pursuant to 28 U.S.C. section 1332.

JDE is in the computer software business. SNE manufactures and sells window and patio doors and is a wholly-owned subsidiary of Ply Gem Products, Inc. The amended complaint alleges that SNE selected JDE to update its [*2] corporate-wide computer system. After JDE successfully ran a pilot at SNE in January 1994, SNE allegedly agreed to license computer software and purchase related services from JDE. (**Compl.**, at P10). On January 31, 1994, V. James Sardo, SNE's then President and CEO, executed on behalf of SNE a Software License Agreement, a Software Service Agreement, a Software Update Agreement and various addenda to same with JDE. **(Id.).** Under section 11 of the Software License Agreement, SNE had thirty (30) days within which to obtain approval of the agreement from its parent company; if SNE did not receive this approval, the agreement would be automatically terminated. **(Id.** at P11). On February 28, 1994, Sardo sent JDE a letter advising it that SNE had received the required corporate approval and wished to proceed with the licensing agreement. **(Id.** at P13).

However, about one month before JDE initiated its pilot program at SNE, Ply Gem named Monte Haymon as its new President and CEO. Haymon brought a new management team and new corporate structure to SNE. **(Id.** at PP15, 18). This new management team allegedly approved all of the software agreements executed [*3] by Sardo as well as Sardo's letter dated February 28, 1994. **(Id.** at P18). Ply Gem's new management team subsequently hired Mercer and its principal, Podany, to provide management consulting services and to review the $ 6.8 million update of SNE's computer system performed by JDE. Ply Gem allegedly hired Mercer to cut the cost of this project and tied Mercer's compensation in part to the

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 1063

Case 1:07-cv-07029 Document 18-3 Filed 03/27/2008 Page 4 of 8

Page 4 of 8

amount of cost reduction it achieved. **(Id.** at PP19-20).

JDE maintains that it performed all of its obligations under its various software agreement with SNE. **(Id.** at P21). Despite its complete performance, JDE alleges that Podany and Mercer intentionally induced SNE not to pay approximately $ 1.1 million in fees owed JDE under the software agreements. **(Id.** at P23). Finally, JDE also contracted with SNE to provide future services related to SNE's software purchases. **(Id.** at P29). JDE alleges that as a result of Podany and Mercer's inducement of SNE to breach its agreements, JDE has been denied an opportunity to provide and collect for future services. **(Id.)**

I. Ripeness of Plaintiff's Claims

HN1 Under Illinois law, a plaintiff must prove the following elements **[*4]** to establish a *prima facie* case for tortious interference with a contractual relationship:

> 1) the existence of a valid and enforceable contract between the plaintiff and another party; 2) that the defendant was aware of the contractual relationship; 3) an intentional and unjustified inducement of a breach of contract by the defendant; 4) a subsequent breach of contract by the other party caused by the defendant's inducement; and 5) damages.

See **Williams v. Shell Oil Co.,** 18 F.3d 396, 402 (7th Cir. 1994) (citing **Lusher v. Becker Bros, Inc.,** 155 Ill. App. 3d 866, 509 N.E.2d 444, 445, 108 Ill. Dec. 748 (1st Dist. 1987)). Similarly, HN2 a plaintiff must prove the following elements to establish a cause of action for intentional interference with prospective business advantage:

> 1) a reasonable expectation of entering into a valid business relationship; 2) defendant's knowledge of the plaintiff's expectancy; 3) defendant's purposeful interference to defeat the expectancy; and 4) damages resulting from the interference.

**Douglas Theater Corp. v. Chicago Title & Trust Co.,** 204 Ill. Dec. 360, 266 Ill. App. 3d 1037, 641 N.E.2d 584, 590 (1st Dist. 1994). **[*5]** The defendant's interference must be directed at a third party. **Id.**

Defendants argue that the amended complaint is not ripe for review because the issues at arbitration -- whether a contract existed between JDE and SNE and whether SNE breached that contract -- have not yet been decided. Accordingly, defendants reason that plaintiff's tort claims are speculative.

HN3 Under Article III of the Constitution, federal courts may only adjudicate "cases or controversies" and may not render advisory opinions. **Hinrichs v. Whitburn,** 975 F.2d 1329, 1333 (7th Cir. 1992). To satisfy the "case or controversy" requirement, a plaintiff must allege that he "has sustained or is immediately in danger of sustaining some direct injury." **See Chicago & Northwestern Transp. Co. v. Soo Line R.R. Co.,** 739 F. Supp. 447 (N.D. Ill. 1990) (quoting **City of Los Angeles v. Lyons,** 461 U.S. 95, 102, 103 S. Ct. 1660, 1665, 75 L. Ed. 2d 675 (1983)). "Abstract injury is not enough . . . . [The] threat of injury must be both 'real and immediate,' and not 'conjectural' or 'hypothetical.'" **[*6]** **Id.** Thus, cases are not ripe for determination "where the parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts." **Hinrichs,** 975 F.2d at 1333.

Plaintiff's complaint is ripe for review. It sets out an actual, immediate injury sustained by plaintiff as a result of defendants' tortious interference with SNE's software agreements; namely, SNE has failed to pay JDE nearly $ 1.1 million in fees that are due and owing under the software agreements. Plaintiff's claim of intentional interference with prospective

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 1063

Case 1:07-cv-07029    Document 18-3    Filed 03/27/2008    Page 5 of 8

Page 5 of 8

business advantage is likewise ripe for review. JDE alleges in its complaint that it had a contract with SNE to provide future services for the software SNE purchased under the agreements. As a result of Mercer and Podany's interference, JDE's reasonable expectation of providing those future services as contemplated by the contract has been defeated. Although the amount of damages resulting from the lost, expected future business is not presently quantified, JDE has sustained an actual, direct financial injury as a result of defendants alleged actions.

The fact that two of the elements **[*7]** which plaintiff must prove to succeed in its tort claims against defendants *(i.e.,* the existence of an agreement between JDE and SNE and SNE's breach of that agreement) will be decided at a separate arbitration proceeding does not mean that this case is not ripe for review. Were this the rule, the Seventh Circuit in **Morrie Mages & Shirlee Mages Foundation v. Thrifty Corporation** would have had to dismiss as unripe Mages's claim against Thrifty for breach of a guaranty agreement rather than deciding as it did to remand the case for entry of an order staying the lawsuit pending conclusion of the arbitration between Mages and Michigan Sporting Goods Distributors ("MSGD") on the issue of whether MSGD defaulted on the promissory note guaranteed by Thrifty. 916 F.2d 402 (7th Cir. 1990). As demonstrated by **Mages,** the inquiry in this case is not whether it is ripe for review but rather whether it should be stayed pending completion of the arbitration between JDE and SNE.

III. The Action Must be Stayed

Defendants argue that the lawsuit should be stayed pursuant to section 3 of the Federal Arbitration Act. [1] HN4 Under a "common sense reading" of this **[*8]** section 3, "if the federal action concerns an 'issue referable to arbitration' under the terms of the arbitration agreement, the district court must stay the trial until the arbitration has concluded." **Morrie Mages & Shirlee Mages Foundation v. Thrifty Corp.,** 916 F.2d 402, 405 (7th Cir. 1990). Accordingly, the threshold determination is whether any of the issues involved in the pending litigation are to be resolved at an arbitration pursuant to a valid arbitration agreement. The key is the relationship between the elements of the alleged tort or contract action and the subject matter of the arbitration clause. **See Kroll v. Doctor's Assoc., Inc.,** 3 F.3d 1167, 1170 (7th Cir. 1993). If some or all of these issues are the subject of arbitration, then the litigation must be stayed regardless of the whether the party in whose favor the stay is entered is a party to the arbitration agreement. **See Mages,** 916 F.2d at 405 -97; **Kroll,** 3 F.3d at 1171-72.

> **FOOTNOTES**
>
> [1] HN5 Section 3 provides in pertinent part:
>
> Stay of proceedings where issue therein referable to arbitration
>
>> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of an action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.
>
> **9 U.S.C. section 3.**

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 1063

Case 1:07-cv-07029 Document 18-3 Filed 03/27/2008 Page 6 of 8

Page 6 of 8

[*9] In **Mages,** Morrie Mages sold his sporting goods business to MSGD for $ 5.0 million in cash and a $ 1.05 million promissory note guaranteed by Thrifty Corporation, MSGD's parent. The Agreement for Purchase between Mages and MSGD included an arbitration provision requiring the parties to submit any "controversy or claim arising out of or relating to [the] contract, or the breach thereof" to arbitration. **Id.** at 403. After MSGD allegedly defaulted on its note and Thrifty refused to honor its guaranty, Mages filed a lawsuit against Thrifty to collect on the guaranty. The Seventh Circuit, reversing the district court, concluded that Mages's lawsuit had to be stayed for two reasons. First, as a predicate to its right to recover against Thrifty on the guaranty, Mages had to establish that MSGD was in default on its note -- the very issue of the Mages-MSGD arbitration. As such, Thrifty's liability was derivative: resolution of both the existence and extent of Thrifty's liability to Mages depended upon the arbitrators' decision. **Id.** at 407. Second, proceeding with the Mages-Thrifty lawsuit would potentially impair the issues before the arbitrator due to the principle [*10] of collateral estoppel. **Id.** Accordingly, the court concluded, based upon Thrifty's derivative liability, that "Thrifty, as a party to litigation involving issues subject to an arbitration agreement, is entitled to a stay *regardless of its status as a party to the arbitration agreement.*" **Id.** (emphasis added). Accord **Stone Distrib. Co. v. Meyers,** 157 F.R.D. 405, 408 (N.D. Ill. 1994).

In **Kroll v. Doctor's Associates, Inc.,** the Seventh Circuit extended its holding in **Mages** to stay a lawsuit pending arbitration where the liability of one of the defendants in the lawsuit was *direct* rather than derivative. 3 F.3d 1167 (7th Cir. 1993). In that case, Kroll filed a lawsuit against Doctor's Associates, Inc. ("DAI"), Jeffrey Wilhelm, Frederick DeLuca and Peter Buck alleging that Wilhelm had fraudulently misrepresented that DAI intended to reinstate Kroll's two "dormant expired [Subway Sandwich] franchises." **Id.** at 1169. Kroll had entered into a franchise agreement with DAI in 1988 wherein he agreed to operate two sandwich shops within 365 days of the agreement. [*11] After the second 180 day extension of the agreement expired, Kroll found two sites for the sandwich shops. He then telephoned Wilhelm to see if he could still use the franchises he purchased in 1988, to which Wilhelm allegedly responded affirmatively. DAI subsequently denied Kroll's request for reinstatement. Id. at 1168-69. DAI sought to dismiss or stay the lawsuit pending arbitration pursuant to an arbitration clause between DAI and Kroll.

Kroll argued that even though he may have been obligated to arbitrate his claim against DAI, his lawsuit against DeLuca, Wilhelm and Buck should proceed because he "did not agree to arbitrate anything with [them]." **Id.** at 1171. The Seventh Circuit rejected this argument and stayed the entire action. With respect to DeLuca and Hunt, the co-owners of DAI, the court concluded that their liability was derivative. Since Kroll did not allege that DAI's corporate veil should be pierced, the court concluded that the claims had "no plausible purpose other than to evade [Kroll's] duty to arbitrate its disputes with DAI." **Id.** Unlike DeLuca and Hunt, however, Wilhelm's liability was [*12] direct rather than derivative: Wilhelm allegedly perpetrated a fraud on Kroll by misrepresenting that DAI would reinstate the franchises. Citing **Mages,** the court nevertheless stayed the claims against Wilhelm, who was not a party to the arbitration agreement. **Id.** The court ordered the stay because Wilhelm's conduct would be at issue in both the DAI-Kroll arbitration and the Kroll lawsuit, DAI's liability derived from Wilhelm's conduct, and resolution of the Kroll lawsuit may have collateral estoppel consequences on the DAI-Kroll arbitration. **Id.** at 1172.

In this case, a stay is required. Certain of the issues presented in JDE's amended complaint are clearly part of the subject matter of the JDE-SNE arbitration agreement. Indeed, two of the elements of JDE's tortious interference claim -- the existence and breach of a contract by SNE -- will specifically be decided by the arbitrator. In addition, the arbitrator will certainly need to review and consider Mercer and Podany's conduct to determine whether SNE breached the agreements. Because JDE has based its claim for intentional interference with prospective business advantage on its [*13] contract with SNE (see **Compl.,** at P29), issues

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 1063

Case 1:07-cv-07029 Document 18-3 Filed 03/27/2008 Page 7 of 8

Page 7 of 8

relating to this claim also fall within the subject matter of the arbitration. [2] Moreover, as recognized in **Mages** and **Kroll,** proceeding with this lawsuit may create undesired collateral estoppel problems for the JDE-SNE arbitration. Finally, defendants are entitled to a stay even though they are not parties to the arbitration agreement and may be directly liable for their tortious conduct vis-a-vis SNE's breach of contract. Defendants have thus properly established the basis for a stay under section 3 of the Federal Arbitration Act and the Seventh Circuit's rulings in **Mages** and **Kroll.**

> **FOOTNOTES**
>
> [2] Even if the issues relating to JDE's claim of intentional interference with prospective business advantage are not related to the issues raised in the arbitration, principles of judicial economy would nonetheless require the issuance of a stay in this action. JDE's counsel has previously explained to the court that if the arbitrators conclude that SNE did not breach the software agreements (thereby foreclosing its claim for tortious interference with contract), JDE will proceed in the alternative on its claim for intentional interference with prospective business advantage. (Transcr. of Hearing Dated Sept. 29, 1994, at 7). Since JDE's litigation strategy in this case depends in part upon the arbitrators' decision, a stay would promote judicial economy.

[*14] The Second Circuit's decision in **Sierra Rutile Ltd. v. Katz,** 937 F.2d 743 (2d Cir. 1991), does not require a contrary result. First, **Mages** and **Kroll** are controlling law of this circuit, which this court must follow. Second, the decision in **Sierra Rutile** is readily distinguishable from the case at bar. The Second Circuit concluded there that the district court should have exercised its jurisdiction because "the claims against the various defendants [to the lawsuit] will be largely if not wholly unaffected by the resolution of claims between Sierra and Bomar in the arbitration proceeding," the defendants refused to be bound by the arbitration results, and the lawsuit contained significant claims not cognizable in arbitration. **Id.** at 750-75.

Accordingly, the JDE's lawsuit against Mercer and Podany is stayed pending completion of the arbitration between JDE and SNE.

WHEREFORE, for the foregoing reasons, Defendants Podany and Mercer Management Consulting, Inc.'s Motion to Dismiss or in the Alternative to Stay Proceedings Pending Arbitration is DENIED in part and GRANTED in part. The motion to [*15] dismiss is denied. That part of the motion which seeks to stay these proceedings pending arbitration is granted. This lawsuit is hereby stayed until the arbitration between J.D. Edwards & Company and SNE Industries, Inc., is completed.

ENTER:

David H. Coar

United States District Judge

Date: January 27, 1995

Service: **Get by LEXSEE®**
Citation: **1995 u.s. dist. LEXIS 1063**
View: Full
Date/Time: Friday, March 21, 2008 - 5:59 PM EDT

* Signal Legend:

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 1063

Case 1:07-cv-07029    Document 18-3    Filed 03/27/2008    Page 8 of 8

Page 8 of 8

- 🛑 - Warning: Negative treatment is indicated
- 🅠 - Questioned: Validity questioned by citing refs
- ⚠️ - Caution: Possible negative treatment
- 🔶 - Positive treatment is indicated
- 🅐 - Citing Refs. With Analysis Available
- 🅘 - Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.



About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.