*1988 U.S. Dist. LEXIS 14988, **

HERSCH M. **KLAFF,** Plaintiff, v. **WIEBOLDT** STORES, INC., JEROME SCHOTTENSTEIN and SCHOTTENSTEIN STORES CORPORATION, Defendants

No. 84 C 0090

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

1988 U.S. Dist. LEXIS 14988

December 22, 1988, Decided and Filed

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant corporation filed a motion to stay proceedings against it for alleged tortious interference with an alleged brokerage contract between plaintiff broker and defendant store or, in the alternative, for tortious interference with a prospective economic advantage of the broker, pending resolution of defendant store's reorganization petition under Chapter 11 of the Bankruptcy Act.

**OVERVIEW:** The broker contended that the store breached an oral agreement for brokerage fees. The broker alleged that the corporation was in control of the store at the time of the breach and filed a tortious interference action against the corporation. The suit against the store was automatically stayed pursuant to Chapter 11 of the Bankruptcy Act, 11 U.S.C.S. § 362(a), when the store filed for bankruptcy. The corporation sought a stay until the resolution of the bankruptcy proceedings. The court denied the motion. The court reasoned that the broker could obtain full relief on its claim from the corporation, that the store and the corporation were in a position similar to that of joint tortfeasor or joint obligors, and that as such the store was not considered an indispensable party. The court held that the corporation could seek indemnification from the store. Additionally, the court found that collateral estoppel would not bar relitigation of issues because the store would not have had a full opportunity to litigate its claims or issues in the first action. Finally, the court found that detriment to the broker in allowing the stay outweighed the benefit to the corporation in granting it.

**OUTCOME:** The court denied the corporation's motion to stay proceedings in a tort action pending resolution of a codefendant's bankruptcy proceedings.

**CORE TERMS:** inconsistent judgments, indemnification, collateral estoppel, proof of claim, codefendant, joined, bankruptcy proceedings, indispensable party, indispensable, feasible, hardship, tortious interference, judicial economy, judgment rendered, clear case, former officers, reorganization, duplication, duplicative, indefinite, pretrial, bankrupt, inequity, failure to file, automatic stay, modification, Bankruptcy Act, bankruptcy law, stay proceedings, filed suit

**LEXISNEXIS(R) HEADNOTES**
Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview
Civil Procedure > Pleading & Practice > Service of Process > General Overview

Civil Procedure > Parties > Joinder > Indispensable Parties
HN1 Whether a party is necessary and indispensable to an action is governed by Fed. R. Civ. P. 19, which provides that: (a) A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

Civil Procedure > Parties > Joinder > Necessary Parties
Civil Procedure > Judgments > General Overview
HN2 Fed. R. Civ. P. 19(b) provides that if a person as described in Fed. R. Civ. P. 19(a)(1)-(2) cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate remedy if the action is dismissed for nonjoinder.

Bankruptcy Law > Case Administration > Administrative Powers > Stays
HN3 The automatic stay provisions of the Bankruptcy Act operate only in favor of a bankrupt codefendant, and not in favor of solvent codefendants.

Civil Procedure > Parties > Joinder > Necessary Parties
HN4 Analysis of Fed. R. Civ. P. 19 is a two-step process. First, the court must determine whether the absent party is a person to be joined if feasible. Second, Rule 19(b) specifically allows the court, where a person described in 19(a) cannot be made a party, to determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed.

Contracts Law > Breach > General Overview
Torts > Business Torts > Commercial Interference > Contracts > General Overview
Torts > Damages > Compensatory Damages > General Overview
HN5 The aim of awarding damages for tortious interference is the same as that of awarding damages for breach of contract, to place the injured party in the same economic position it would have been in had the contract not been breached.

Civil Procedure > Parties > Joinder > Indispensable Parties
Civil Procedure > Parties > Joinder > Necessary Parties
Torts > Procedure > Multiple Defendants > Joint & Several Liability
HN6 Joint tortfeasors are not considered to be indispensable parties to an action. Nor are joint obligors or guarantors indispensable.

Civil Procedure > Judgments > Preclusion & Effect of Judgments > Estoppel > Collateral Estoppel
HN7 The judicially created doctrine of collateral estoppel does not apply when the party against whom the earlier decision is asserted did not have a full and fair opportunity to litigate the claim or issues.

Get a Document - by Party Name - klaff AND wieboldt
Case 1:07-cv-07029    Document 18-4    Filed 03/27/2008    Page 3 of 9
Page 3 of 9

Torts > Procedure > Multiple Defendants > Joint & Several Liability

HN8 Anytime a plaintiff does not join all possible defendants alleged to be jointly and severally liable, those parties who are joined suffer the risk of an inconsistent judgment resulting in a subsequent action for contribution or indemnification. Such is the nature of joint and several liability.

Civil Procedure > Judgments > Entry of Judgments > Stays of Proceedings > General Overview

HN9 To be entitled to a stay, a party must demonstrate a clear case of hardship or inequity if there is even a fair possibility that the stay will damage the other party. Moreover, even if a stay is granted pursuant the court's powers, it must be reasonably limited in scope. The stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description.

Bankruptcy Law > Case Administration > Administrative Powers > Stays
Bankruptcy Law > Case Administration > Administrative Powers > Stays > Relief From Stays > General Overview
Bankruptcy Law > Case Administration > Notice

HN10 Upon the power to stay proceedings, which is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants, the court can still not properly grant an indefinite stay, or condition lifting a stay upon resolution of bankruptcy proceedings. Although the Seventh Circuit has not considered this question, the court is in accord with other jurisdictions which have held that such a stay would be immoderate. In imposing a limited stay of proceedings, courts have typically considered factors such as notice of the likelihood of imminent resolution of bankruptcy proceedings, the benefit from the labors of a bankruptcy examiner, the involvement of outside directors in the reorganization proceedings.

Bankruptcy Law > Case Administration > Administrative Powers > Stays
Civil Procedure > Justiciability > Case or Controversy Requirements > General Overview

HN11 Plaintiffs should not be denied a forum in which to pursue their claims against defendants who remain unshielded by the bankruptcy laws.

**OPINION BY:** **[*1]** ROVNER

**OPINION**

MEMORANDUM OPINION AND ORDER

ILANA DIAMOND ROVNER, UNITED STATES DISTRICT JUDGE

I. INTRODUCTION

This case is before the Court on the motion of defendant Jerome Schottenstein and defendant Schottenstein Stores Corporation (collectively "the Schottensteins") to stay the proceedings against them pending resolution of defendant Wieboldt Stores' ("Wieboldt") reorganization petition under Chapter II of the Bankruptcy Act.

Plaintiff Klaff has filed a three count complaint in this case. In Count I, Klaff seeks damages against Wieboldt for Wieboldt's alleged breach of an alleged oral contract in 1982, whereby Klaff was to act as broker for Wieboldt in the possible renting out of the upper floors of

*Wieboldt's downtown store to First National Bank of Chicago.*

*Count I sounds in quantum meruit based upon Klaff 's claim that Wieboldt was unjustly enriched as a result of the subsequent lease of those floors to First National and Wieboldt's failure to pay Klaff a reasonable commission for finding First National as a tenant.*

*In Count III of the complaint, Klaff brings suit against the Schottensteins, allegedly in control of Wieboldt at the time, for tortious interference with the alleged  [*2]  brokerage contract between Klaff and Wieboldt or, in the alternative, for tortious interference with a prospective economic advantage of Klaff due to his claim to compensation for aiding Wieboldt in obtaining the First National lease.*

*Plaintiff Klaff filed his complaint in January 1984. On November 1, 1984, the case was transferred to this Court from the docket of Judge Getzendanner. It proceeded through discovery and by mid-1985 the date for filing the pretrial order had been extended several times. The pretrial order was finally filed in February 1986. Prior to the filing of the pretrial order, WSI Inc. (WSI) bought out Wieboldt pursuant to a tender offer, but Wieboldt continued to experience financial difficulties, with the result that Wieboldt filed for bankruptcy in September, 1986. The suit against Wieboldt was stayed automatically pursuant to 11 U.S.C. § 362(a), and proceedings against the solvent codefendants have progressed little since that date.* [1] *In September 1987, Wieboldt filed suit in the United States District Court in an attempt to reverse the leveraged buy-out which sold the company to WSI, alleging that the sale constituted a fraudulent conveyance. Realizing that  [*3]  the September lawsuit might further delay the resolution of Wieboldt's bankruptcy proceedings, the Court instructed the Schottensteins to file a formal motion if they wished to have this case stayed.*

> **FOOTNOTES**
>
> [1] *The Court held a number of settlement conferences with the parties in late 1987 and early 1988 that proved unfruitful.*

*In their motion for a stay of this action, defendants Schottensteins claim that it would be improper to proceed in the action against them because Wieboldt is a necessary and indispensable party. The Schottensteins claim further that judicial economy would best be served by staying the action until the plaintiff obtains from the Bankruptcy Court a modification of the automatic stay against Wieboldt because only this Court has jurisdiction of all the claims put forward by the parties. The Schottensteins contend next that they would be severely prejudiced if the Court severs Wieboldt from the action because (i) it might be difficult to obtain the presence of Wieboldt's officers and employees, once Wieboldt were severed, and (ii) if the plaintiff were to succeed on the merits, the absence of Wieboldt would preclude collateral estoppel and the Schottensteins would  [*4]  be forced to relitigate numerous issues in the Bankruptcy Court against Wieboldt on their proof of claim, possibly resulting in inconsistent judgments in the two courts and the duplication of litigation expense. Finally, the defendants argue that the plaintiff's failure to move for a modification of the automatic stay and failure to file a proof of claim are inconsistent with his assertion of the desire for speedy resolution of his claims.*

*II. DISCUSSION*

*The Schottensteins contend first that proceedings against them should be stayed because Wieboldt is an indispensable party.* [2] *HN1 Whether a party is necessary and indispensable to an action is governed by Rule 19 of the Federal Rules of Civil Procedure. The rule provides:*

*(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose*

*joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical* **[\*5]** *matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. . . .*

*HN2 (b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate remedy if the action is dismissed for nonjoinder.*

---

**FOOTNOTES**

2 It is well established that HN3 the automatic stay provisions of the Bankruptcy Act operate only in favor of the bankrupt codefendant (Wieboldt), and not in favor of the solvent codefendants (the Schottensteins). In re UNR Industries, Inc., 23 B.R. 144, 146 (N.D. Ill. 1982); Royal Truck & Trailer, Inc. v. Armadora Maritima Salvadorena, 10 B.R. 488, 492 (N.D. Ill. 1981).

---

**[\*6]** Hence, HN4 analysis of Rule 19 is a two-step process. First, the court must determine whether the absent party is a "person to be joined if feasible." Second, Rule 19(b) specifically allows the Court, where a person described above cannot be made a party, to determine whether "in equity and good conscience" the action should proceed among the parties before it, or should be dismissed. See United States v. Masonry Contractors Ass'n of Memphis, 497 F.2d 871, 875 (6th Cir. 1974); Bedel v. Thompson, 103 F.R.D. 78, 80 (S.D. Ohio 1984).

Rule 10(a)(1) does not apply in this case because complete relief "can be accorded among those already parties" in Wieboldt's absence. Plaintiff Klaff seeks recovery for the actual loss suffered from either Wieboldt or the Schottensteins. 3 HN5 The aim of awarding damages for tortious interference is the same as that of awarding damages for breach of contract - to place the injured party in the same economic position it would have been in had the contract not been breached. See Restatement of Torts 2d, § 774. Collection on one judgment would preclude recovery on the other, because there can be no double recovery for compensatory damages. See Mitchell **[\*7]** v. Weiger, 56 Ill. App. 3d 236, 241, 371 N.E.2d 888 (1977); Prosser & Keeton, Torts § 129 at 1002-3 (5th ed. 1984). Wieboldt, the allegedly breaching party, and the Schottensteins, the parties allegedly inducing the breach, would be jointly and severally liable for Klaff 's single injury. See Marcus, Stowell & Beye v. Jefferson Inv. Corp., 797 F.2d 227, 233 (5th Cir. 1986). In this respect, the defendants' position is similar to that of joint tortfeasors and joint obligors or guarantors, because either Wieboldt or the Schottensteins could satisfy the whole judgment. It is well established that HN6 joint tortfeasors are not considered to be indispensable parties to an action. Herpich v. Wallace, 430 F.2d 792, 817 (5th Cir. 1970). Nor are joint obligors or guarantors indispensable. Cunard Line Ltd. v. Abney, 540 F. Supp. 657, 659 (D.C.N.Y. 1982); Royal Truck & Trailer, Inc. v. Armadora Maritima Salvadorena, 1O B.R. 488, 492 (N.D. Ill. 1981); Smith v. Mandel, 66 F.R.D. 405, 409 (D.C.S.C. 1975); see also First Granite City National Bank v. Champion, 130 Ill. App. 2d 970, 268 N.E.2d 35, 41 (1970).

> **FOOTNOTES**
>
> **3** Although the plaintiff's complaint asks for compensatory damages alone, his 1986 trial brief includes an apparent claim for exemplary damages. The plaintiff has not moved to amend his complaint accordingly. Consequently, the Court does not address the question of examplary damages in this opinion.

[*8] Turning to the second part of Rule 19(a), the Court notes that Wieboldt has an interest in the subject matter of the action, which is predicated upon alleged business and contractual relations between Wieboldt and Klaff. Depending on the outcome of the case, Wieboldt could possibly face liability directly on a breach of contract claim or indirectly if the plaintiff were to recover against the Schottensteins who would in turn look to Wieboldt for indemnification.

However, an interest alone is not sufficient to make Wieboldt a "person to be joined if feasible." Therefore the defendants argue, pursuant to Rule 19 (a)(2)(ii), that the absence of Wieboldt will lead to a substantial risk of the Schottensteins being subject to inconsistent judgments. **4** The Schottensteins contend that if they are found liable here and subsequently bring an indemnification proceeding against Wieboldt in the Bankruptcy Court, then Wieboldt, the absent party, would not be bound by principles of res judicata. If the Bankruptcy Court were to find no liability on the part of Wieboldt, the Schottensteins argue, they would face inconsistent judgments, forcing them to pay damages to the plaintiff while having no [*9] enforceable right of contribution or indemnification against Wieboldt.

> **FOOTNOTES**
>
> **4** Rule 19(a)(2)(i) is inapplicable here because Wieboldt would not be precluded by collateral estoppel from relitigation of any of the issues adjudicated in a continuation of these proceedings. HN7 "[T]he judicially created doctrine of collateral estoppel does not apply when the party against whom the earlier decision is asserted did not have a full and fair opportunity to litigate the claim or issues." Kremer v. Chemical Construction Corp., 456 U.S. 461, 481, 102 S. Ct. 1883, 1897 (1982); Wieboldt would clearly not have a "full and fair opportunity" to litigate any of the issues in this case, and collateral estoppel could not therefore be asserted against it, if the Court chose to continue in Wieboldt's absence. C.f. Lee v. City of Peoria, 685 F.2d 196, 201 (7th Cir. 1982).

The same argument was addressed by the court in Bedel v. Thompson, 103 F.R.D. 78 (S.D.Ohio 1984). In Bedel, the court found that the defendant's contention misstated the actual effect of the two hypothetical judgments:

A finding of liability in this action coupled with a determination by the Bankruptcy Court of no entitlement [*10] to contribution or indemnification would subject [defendant] to but one judgment "obligation. Obviously defendant would be obliged to pay any judgment rendered against it in this action. However, a determination in the Bankruptcy Court of no liability on the part of [bankrupt codefendant] would impose no "obligation" on the defendant, but rather would be an adjudication concerning the obligations of [bankrupt codefendant]. Even though the result of the above scenario may be, to a certain extent, logically inconsistent, Rule 19 does not speak of inconsistent "results." Rather, it speaks in terms of inconsistent "obligations." As pointed out, defendant's scenario does not result in subjecting the defendant to inconsistent obligations, but instead imposes the consequences of inconsistent results.

Id. at 81. Noting that the relevant inquiry is directed towards inconsistent obligations and not toward inconsistent results, the court continued, HN8 "[A]nytime a plaintiff does not join all possible defendants alleged to be jointly and severally liable, those parties who are joined

suffer the risk of an inconsistent judgment result in a subsequent action for contribution or indemnification. **[*11]** Such is the nature of joint and several liability and such is the case here." Id.

The Schottensteins could face the risk of inconsistent judgments if unsuccessful both in this Court and then in an indemnification proceeding in the Bankruptcy Court. However, they would face at most one obligation, payment of a judgment to the plaintiff. Therefore, the Court finds that the Schottensteins have not shown Wieboldt to be a party indispensable to plaintiff Klaff's lawsuit.

Even absent a determination that Wieboldt is an indispensable party, the Court has the power to stay the proceedings in the interest of judicial economy and fairness to the parties. Landis v. North American Co., 299 U.S. 248, 254, 57 S. Ct. 163, 165 (1936). The Supreme Court has indicated, however, that HN9 to be entitled to a stay, a party must demonstrate a clear case of hardship or inequity if there is even a fair possibility that the stay will damage the other party. Id. Moreover, even if a stay is granted pursuant the court s powers, it must be reasonably limited in scope. "The stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far **[*12]** at least as they are susceptible of prevision and description." Id. at 257, 57 S. Ct. at 167.

The possible damage in this case would be the financial hardship to the plaintiff, who originally filed suit over four years ago and who is justifiably concerned that the stay asked for by the Schottensteins would be of indefinite duration. The very real possibility seems to exist that the plaintiff will be denied his day in court for several more years.

In attempting to carry their burden of "mak[ing] out a clear case of hardship or inequity in being required to go forward" id. at 254, 57 S. Ct. at 165, the defendants advance several arguments. First, the Schottensteins contend that proceedings against them should be stayed because, if the plaintiff were to succeed on the merits, the absence of Wieboldt would preclude collateral estoppel, and they would be forced to relitigate numerous issues in the Bankruptcy Court on their proof of claim, resulting in possibly inconsistent judgments and duplicative litigation. Such duplicative litigation, they contend, would also impact adversely on judicial resources. The problem of inconsistent judgments was addressed in the Court's Rule 19 analysis **[*13]** supra. As for the duplicative litigation expense, the Court agrees with the Sixth Circuit that "any duplication or multiple litigation which may occur is a direct byproduct of bankruptcy law. As such, the duplication, to the extent that it may exist, is congressionally created and sanctioned." Lynch v. Johns-Manville Sales Corp., 710 F.2d 1194, 1199 (6th Cir. 1983).

The defendants next contend that they would be prejudiced by the absence of Wieboldt in that it might be difficult to obtain the presence of Wieboldt's former officers and employees, who the defendants claim are necessary for trial. However, the defendants make no attempt to support their bald statement with the names of the officers and employees, or reasons why their cooperation would not be forthcoming. Without more the Court can only consider the contention conclusory and unpersuasive. [5]

---

**FOOTNOTES**

[5] The Court notes that extensive discovery, including depositions of several of Wieboldt's former officers and employees, had already taken place in this case before Wieboldt filed for bankruptcy and, in fact, the parties were on the verge of going to trial in 1986. If the Schottensteins are unable to obtain the presence of Wieboldt's former officers and employees at trial, the Schottensteins may ask the Court for assistance pursuant to its subpoena power. See Fed. R. Civ. P. 45(e)(1) The defendants have not contended that these individuals cannot be subpoenaed for trial.

Get a Document - by Party Name - klaff AND wieboldt
Case 1:07-cv-07029    Document 18-4    Filed 03/27/2008    Page 8 of 9
Page 8 of 9

[*14] *Finally, the defendants attempt to put the burden on the plaintiff to obtain from the Bankruptcy Court a modification of the automatic stay against Wieboldt in the interests of judicial economy. The Schottensteins claim that Klaff's failure to do so, combined with his failure to file a proof of claim in the Bankruptcy Court, are somehow inconsistent with Klaff's assertion of a desire for speedy resolution of his claims. However, the defendants cannot carry their burden of making out "a clear case of hardship and inequity" simply by seeking to put the onus on the plaintiff. Moreover, the Court is not persuaded that the plaintiff's failure to file a proof of claim in the Bankruptcy Court is relevant to the issue of the granting or denial of a stay in this case.*

*Even if the defendants had persuaded the Court that a stay was appropriate based* HN10 *upon "the power to stay proceedings [which] is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants" ( Landis, 299 U.S. at 254, 57 S. Ct. at 165), the Court could still not properly grant an indefinite stay, or condition* [*15] *lifting the stay upon resolution of the bankruptcy proceedings. Although the Seventh Circuit has not considered this question, the Court is in accord with other jurisdictions which have held that such a stay would be immoderate. See Wedgeworth v. Fibreboard Corp., 706 F.2d 541 (5th Cir. 1983); CTI Container Leasing Corp. v. Uiterwyk Corp., 685 F.2d 1284 (11th Cir. 1982), cert. denied, 459 U.S. 1173, 103 S. Ct. 820 (1983); McKnight v. Blanchard, 667 F.2d 477 (5th Cir. 1982); Stoller v. Baldwin-United Corp., 41 B.R. 884, 892 (S.D.Ohio 1984). In imposing a limited stay of proceedings, courts have typically considered factors such as notice of the likelihood of imminent resolution of the bankruptcy proceedings, the benefit from the labors of a bankruptcy examiner, the involvement of outside directors in the reorganization proceedings. See e.g., Stoller, 41 B.R. at 892-93. However, such factors are absent in this case, and the Court can see no real advantage to a limited stay where there is no indication that resolution of Wieboldt's bankruptcy proceedings will occur in the immediate future.*

*The Court is persuaded that the requisite balancing of the competing interests* [*16] *involved weighs in favor of allowing the action to proceed against the Schottensteins. Although the Court can understand the Schottensteins' desire to suspend all litigation until Wieboldt comes out of bankruptcy, not the least in order that any potential claim for indemnity that the Schottensteins may have against Wieboldt can be resolved in a single proceeding, that desire alone is not sufficient justification for an indefinite stay.* HN11 *"[P]laintiffs should not thus be denied a forum in which to pursue their claims against those defendants who remain unshielded by the bankruptcy laws." Lynch v. Johns-Manville Sales Corp., 710 F.2d 1194, (6th Cir. 1983) (quoting In re Related Asbestos Cases, 23 B.R. 523, 532 (N.D.Cal. 1982)).*

III. CONCLUSION

*For the foregoing reasons, the Court denies the motion of the defendants Schottenstein and Schottenstein Stores to stay proceedings in this case pending the resolution of defendant Wieboldt's Chapter II reorganization in the Bankruptcy Court. It is so ordered.*

Source:  Legal > . . . / > **IL Federal & State Cases, Combined**
 Terms:  **name(klaff and wieboldt)**   (Edit Search | Suggest Terms for My Search)
   View:  Full
Date/Time:  Tuesday, March 18, 2008 - 3:56 PM EDT

* Signal Legend:
 🔴 -  Warning: Negative treatment is indicated
 [Q] -  Questioned: Validity questioned by citing refs

- ⚠ - Caution: Possible negative treatment
- ◆ - Positive treatment is indicated
- Ⓐ - Citing Refs. With Analysis Available
- ⓘ - Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.



About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.