## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | | |
|---|---|---|---|
| BRAL CORPORATION, an Ohio corporation, | ) ) ) | | |
| Plaintiff, | ) ) | | |
| v. | ) ) | No. 07 C 7029 | |
| CMN COMPONENTS, INC., an Illinois corporation, | ) ) | **Jury Demanded** | |
| Defendant. | ) ) | Judge Gettleman Magistrate Judge Denlow | |

## DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT, AFFIRMATIVE DEFFENSESS AND COUNTERCLAIM

CMN COMPONENTS, INC., an Illinois corporation, ("CMN" or "Defendant") by and through its attorneys, answers Plaintiff's Complaint as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Bral is an Ohio corporation with its principal place of business at 2610 North Park Avenue in Warren, Ohio.  Bral's business includes but is not limited to the importation and machining of metal products utilized in the railroad industry.

**ANSWER:**

Defendant admits that Bral's business includes the importation and machining of metal products utilized in the railroad industry.  The balance of the allegations of Paragraph 1 are admitted on information and belief only.

2.      CMN is an Illinois corporation with its corporate headquarters at 2130 Spencer Road

in New Lennox, Illinois. CMN designs, engineers and supplies railcar component parts.

**ANSWER:**

The allegations of Paragraph 2 are admitted.

3.    This Court has jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(a)(1), in

that this is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive

of interest and costs, and is between citizens of different States.

**ANSWER:**

The allegations of Paragraph 3 are admitted.

4.    Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a)(1) because

CMN resides within this judicial district.

**ANSWER:**

The allegations of Paragraph 4 are admitted.

<u>**FACTS**</u>

5.    Johnstown America Corporation ("Johnstown") holds the patent on the MegaFlo$^{TM}$

door system which is an innovative discharge door system for coal-carrying railcars that opens

automatically to allow for the quick and efficient offloading of the cargo. The AutoFlood II$^{TM}$ and

AutoFlood III$^{TM}$ aluminum hopper cars are built with the MegaFlo$^{TM}$ door system.   Johnstown utilizes

certain castings in the manufacture of the MegaFlo$^{TM}$ systems installed on the AutoFlood II$^{TM}$ and

AutoFlood III$^{TM}$ Hopper railcars.

**ANSWER:**

The allegations of Paragraph 5 are admitted.

6.      Bral entered into an Exclusive Supply Agreement with Johnstown on or about May 1, 2004, which provides that Bral is the <u>exclusive and sole provider</u> of certain AutoFlood II$^{TM}$ and AutoFlood III$^{TM}$ castings (the "Exclusive Parts") that Johnstown requires in the manufacture of the MegaFlo$^{TM}$ systems. A true and accurate copy of the Exclusive Supply Agreement (the "Agreement") is attached to the Complaint as **Exhibit** A.   Bral arranged production capacity and granted Johnstown a reduction in pricing as part of the consideration for Johnstown fulfilling all of its requirements for the Exclusive Parts solely from Bral and in accordance with the terms of the Agreement. Pursuant to the terms of the Agreement, Johnstown provides to Bral a six-month projection of its requirements for the Exclusive Parts and places orders in line with those projections.

**ANSWER:**

The Agreement attached to the Complaint as Exhibit A speaks for itself, and therefore, to the extent Plaintiff's Complaint mischaracterizes same, said allegations are denied.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations. Defendant further avers that by its terms, Exhibit A does not represent a complete agreement because certain listed exhibits to same are not attached to the Complaint.

7.      On or about May 10, 2004, Bral and Johnstown entered into the First Amendment to Exclusive Supply Agreement. A true and accurate copy of the First Amendment to Exclusive Supply Agreement (the "First Amendment") is attached to the Complaint as Exhibit B. The First Amendment provides that Johnstown may independently develop a relationship with another manufacturer under limited circumstances and to a very restricted degree, for post-agreement purposes only. Johnstown may develop a relationship with another manufacturer or supplier in the following manner only: (a)

developing and/or supplying tooling for the manufacture of Exclusive Parts, (b) inspecting and sampling

Exclusive Parts and components produced or supplied by the alternate manufacturer or supplier, and (c)

testing of the Exclusive Parts provided by the alternate manufacturer or supplier on not more than five

(5) AutoFlood II$^{TM}$ and AutoFlood III$^{TM}$ railroad cars in total.

**ANSWER:**

      Defendant avers that Exhibit B to Plaintiff's Complaint speaks for itself and further denies that

Plaintiff has accurately characterized the terms of Exhibit B.  Defendant lacks knowledge or information

sufficient to form a belief as to the truth of the remaining allegations.

      8.      On or about December 6, 2004, Bral and Johnstown entered into the Second

Amendment to Exclusive Supply Agreement. A true and accurate copy of the Second Amendment to

Exclusive Supply Agreement (the "Second Amendment," referred to with the First Amendment as the

"Amendments") is attached to the Complaint as Exhibit C.  The Second Amendment extended the term

of the Agreement to December 31, 2007 (the "Termination Date").

**ANSWER:**

      Exhibit C to the Complaint speaks for itself, and therefore, to the extent Plaintiff's Complaint

mischaracterizes same, said allegations are denied.  Defendant lacks knowledge or information sufficient

to form a belief as to the truth of the remaining allegations.

      9.      CMN knew of the Agreement between Bral and Johnstown and of the prices at which

Bral had agreed to sell castings to Johnstown.

**ANSWER:**

      CMN admits that it had been advised of the existence of an agreement between Bral and

Johnstown but denies that it knew the full terms or conditions of same and denies that it saw the Agreement prior to being served with the Complaint herein. CMN was advised by Johnstown that it was not precluded from purchasing the relevant parts from CMN pursuant to any agreement between Johnstown and Bral. CMN denies that it knew the prices at which Bral had agreed to sell castings to Johnstown.

10.     CMN actively solicited Johnstown to purchase the castings from CMN with full knowledge that Johnstown was required to order all of its castings from Bral for a specified term. In doing so, CMN offered castings to Johnstown at prices below those that had been agreed to by Bral and Johnstown with the intent that such lower prices would induce Johnstown to breach its contract with Bral.

**ANSWER:**

Defendant denies the allegations of Paragraph 10. In fact, CMN first quoted prices for castings to Johnstown prior to the Exclusive Supply Agreement.

11.     On information and belief, Johnstown began ordering and purchasing castings for use in the manufacture of AutoFlood II$^{TM}$ and AutoFlood III$^{TM}$ railroad cars from CMN within months of Bral and Johnstown executing the Agreement. CMN imported and shipped no less than 3,884 sets of CMN Violating Parts to Johnstown during the period from June 2004 through November 2007.

**ANSWER:**

Defendant admits that Johnstown began ordering and purchasing castings for use in the manufacture of AutoFlood II$^{TM}$ and AutoFlood III$^{TM}$ railroad cars from CMN prior to and within months of May 1, 2004, which is the date of execution listed on Exhibit A. The term "Violating Parts"

is not defined elsewhere in the Complaint. Assuming that term refers to parts covered by the exclusivity provisions of Exhibit A, Defendant lacks knowledge or information sufficient to form a belief as the truth of the remaining allegations in Paragraph 11 because the exhibits to Exhibit A which list those parts and their specifications have never been seen by Defendant. To the extent the allegations of Paragraph 11 infer that Defendant knowingly induced Johnstown to breach any agreement it had with Plaintiff, the same are denied.

12.     On information and belief, Johnstown has installed CMN Violating Parts on no less than 5,000 railcars it has built since the execution of the Agreement and has compiled a substantial inventory of CMN Violating Parts.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12.

<u>**COUNT I**</u>

13.     Bral incorporates by reference the statements and allegations previously set forth in its Complaint as if fully rewritten here.

**ANSWER:**

Defendant incorporates herein by reference its above answers.

14.     The Agreement evidences a valid and binding contractual relationship between Bral and Johnstown. CMN knew of the Agreement and its exclusive dealing provisions no later than June 2004.

**ANSWER:**

Whether or not the Agreement evidences a valid and binding contractual relationship between

6

Bral and Johnstown is a legal conclusion to which no response is required. Further, for Defendant's counsel to form an opinion as to the validity of same, discovery will be needed, so Defendant lacks sufficient knowledge or information to form a belief as to the accuracy of that conclusion.

CMN admits that it had been advised by Bral of the existence of an agreement between Bral and Johnstown, although it does not recall the date. It denies that it knew the full terms or conditions of same and denies that it saw the Agreement or any portion of it prior to being served with the Complaint herein. CMN was advised by Johnstown that it was not precluded from purchasing the relevant parts from CMN pursuant to any agreement between Johnstown and Bral.

15. Despite CMN's knowledge of the exclusive nature of the Agreement, it intentionally interfered with the Agreement without justification by wrongfully interposing itself into the relationship between Bral and Johnstown and inducing Johnstown. This wrongful interference caused Johnstown to breach its Agreement with Bral. In breach of the Agreement, Johnstown has significantly reduced the size of its purchase orders from Bral because it is also receiving CMN Violating Parts directly from CMN and is utilizing them on the railcars it is manufacturing.

**ANSWER:**

Defendant denies the allegations of Paragraph 15.

16. CMN's actions were undertaken with the intent to injure Bral's business.

**ANSWER:**

Defendant denies the allegations of Paragraph 16.

17. CMN's intentional tortious interference with the exclusive Agreement between Bral and Johnstown has caused Bral substantial injury in excess of $75,000, in an amount to be determined at

trial.

**ANSWER:**

Defendant denies the allegations of Paragraph 17.

WHEREFORE, Defendant, CMN Components, Inc., prays for judgment in its favor, for all taxable costs and for such further relief this Court deems appropriate.

<u>**AFFIRMATIVE DEFENSES**</u>

In further answer to Plaintiff's Complaint, Defendant asserts the following Affirmative Defenses:

**First Affirmative Defense – Failure to Mitigate Damages**

1.      Upon learning that CMN was selling the subject parts to Johnstown, Plaintiff had a duty to take reasonable measures to minimize its damages.

2.      Plaintiff knew or reasonably should have known that CMN was selling the subject parts to Johnstown at the time those sales began or shortly thereafter.

3.      Upon learning of the above sales, Plaintiff took no action with regard to CMN to fully inform it of the scope of the Exclusive Supply Agreement, did not ask it to cease and desist in order to minimize its damages, and did not seek injunctive relief during that time.

4.      Instead, through its inactivity with respect to CMN, Plaintiff acquiesced in the subject sales by CMN.

**Second Affirmative Defense – Justified Conduct**

1.      As stated above, Defendant denies that it knew of the prices charged to Johnstown by Bral.

2.      As a consequence, Defendant's conduct was justified as economic competition as

8

stated in comment *m* to Section 766 of the Restatement.

### Third Affirmative Defense – CMN's Parts Were to Different Specifications

1.      The relevant parts supplied to Johnstown by CMN were produced in accordance with certain specifications provided to CMN by Johnstown.    Those specifications included certain heat treating operations.

2.      Upon information and belief, the parts supplied to Johnstown by Bral did not receive the same heat treatment so that the parts supplied to Johnstown by Bral did not meet the specifications of those supplied to Johnstown by CMN.

3.      The Exclusive Supply Agreement attached to Plaintiff's Complaint as Exhibit A ("the Agreement") states that the specifications for the Exclusive Parts therein referenced are to be produced in accordance with Exhibit B of the Agreement, which CMN has never seen.

4.      If the specifications called for in Exhibit B of the Agreement are the same as the specifications provided to CMN by Johnstown, then Bral was in breach of its obligations under the Agreement, since it was not providing parts in accordance with those specifications, and Johnstown was justified in purchasing the required parts from another supplier.

5.      Under any circumstances, to the extent their parts were produced to different specifications, CMN was not and could not have been providing the same parts to Johnstown as Bral.

### Fourth Affirmative Defense – Johnstown Produced Railcars and Purchased Parts Outside the Scope of the Agreement

1.      Upon information and belief, at relevant times, Johnstown was producing well over twelve railcar sets per business day that used AutoFlood II or III castings.

9

2.      Section 11 of the Agreement states as follows:

**11.    Production Capacity.**  Bral has reserved production capacity at Daming's manufacturing facilities to guarantee the production of Exclusive Parts in quantities of twelve (12) complete railcar sets of AutoFlood II or III castings per business day, which Exclusive Parts shall be retained by Bral for sale to Johnstown under this Agreement.  Production requirements in excess of twelve (12) complete railcar sets per day are subject negotiation between the parties, which requirements shall be set forth in a written agreement of the parties.

3.      When read as a whole, and for the above section to have meaning, the Agreement applies to Exclusive Parts necessary for up to twelve railcars per day.  By the terms of the Agreement, the production of additional parts is subject to negotiation between the parties.

4.      Therefore, to the extent Johnstown purchased parts from CMN for railcars in excess of twelve railcars per business day, Johnstown was not in violation of the Agreement.

WHEREFORE, Defendant, CMN Components, Inc., prays for judgment in its favor, for all taxable costs and for such further relief this Court deems appropriate.

## COUNTERCLAIM

CMN, pursuant to Federal Rule of Civil Procedure 13, asserts the following Counterclaim against Bral:

## PARTIES, JURISDICTION AND VENUE

1.      The parties to this Counterclaim and the grounds for jurisdiction and venue are identical to those set forth in original complaint, and the allegations pertaining to same are incorporated herein by reference.

## COUNT I – TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

2.    For over two years prior to April, 2004, CMN obtained parts for sale to companies in the railcar and other industries from a certain foundry in China, Ningbo Daming Precision Casting Co., Ltd. ("Daming").

3.    During that same period of time, Bral also used Daming as a source of parts to sell to Johnstown.

4.    Upon information and belief, on or about February 29, 2004, Bral advised personnel at Daming that Johnstown was glad that Daming refused to produce patterns for CMN and that Johnstown did not trust Mr. Joe Nazimek, one of the principals of CMN, while knowing that above representations were false.

5.    Upon information and belief, on or about March 12, 2004, Bral advised Daming that Mr. Nazimek would lie on his visit to China and that CMN was without any warehouses, without any equipment, and without any knowledge of casting and machining or quality control, while knowing the above representations were false.

6.    The above representations were made to harm CMN and not for any legitimate business purpose.

7.    At the time of the above misrepresentations CMN had a growing business supplying parts to companies involved in the railcar and other industries, including Johnstown, relying exclusively on Daming as its casting supplier.

8.    As a consequence of the above misrepresentations, around March 28, 2004, Daming refused to fill an outstanding purchase order from CMN and refused do further business with CMN causing a serious disruption to CMN's business including loss of sales, substantial expense in developing

additional sources for those parts that had been produced by Daming and for those subsequently

ordered parts that could have been provided by Daming resulting in damages to CMN in excess of

$75,000.  Among the parts that CMN was unable to supply until it was able to develop additional

sources were the castings supplied to Johnstown described in Plaintiff's complaint as "Exclusive Parts."

WHEREFORE, CMN demands judgment against Bral for the following:

A.      Compensatory and incidental damages in an amount to be determined through discovery and at

trial;

B.      Punitive damages and costs; and

C.      Such further relief as this Court deems appropriate.

CMN COMPONENTS, INC.


By: _____/s/James R. Dashiell_____
        One of its attorneys


## JURY DEMAND

Defendant demands a trial by jury of all issues so triable.

CMN COMPONENTS, INC.


By: _____/s/James R. Dashiell_____
        One of its attorneys

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on June 6, 2008, I served a true and correct copy of the above

pleadings on behalf of the Defendant, CMN Components, Inc., on counsel for the Plaintiff by Electronic

Case Filing (ECF).

_____/s/James R. Dashiell_____

James R. Dashiell
Dashiell Law Offices, LLC
10 South LaSalle Street
Suite 3500
Chicago, Illinois  60603
(312) 920-9118
6182044

13